Hugh R. Fulton *v.* Lancaster County, Appellant.

[Marked to be reported.]

*Contract—Public officer—Public policy—Attorney at law—Contingent fee.*

One who, while county solicitor, made a contract for the prosecution of a claim on a contingent fee, which contract was illegal and void by reason of his official position, can still recover what his services are worth upon. proof of a new engagement after the expiration of his official term. In this case, the evidence of the new contract was held sufficient to justify the submission of the question to the jury.

Argued Feb 26, 1894. Appeal, No. 350, Jan. T., 1893, by defendant, from judgment of C. P. Berks Co., Aug. T., 1890, No. 101, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Affirmed.

Assumpsit for professional services. Before ENDLICH, J.

The facts appear by the opinion of the court below.

On the trial, Charles H. Schaeffer, Esq., a witness for plaintiff, was allowed to testify, under objection and exception, as to the value of the services. [1]

The court charged in part as follows:

"The questions for your determination are: (1) Has the plaintiff shown that in 1883 a new contract was made between these parties, which they intended to be the basis of all future services and compensation? If he has not so shown, you will return your verdict for defendant. If he has, and only then, you will inquire: (2) What sum fairly represents the value of plaintiff's services rendered after 1882 in obtaining the credit of $20,823.50?" [6]

The plaintiff's points were, among others, as follows:

"3. If the jury believe, from the evidence, that, by reason of any contract or agreement entered into between the plaintiff and the county commissioners, after the first Monday of January, 1883, he undertook, with their knowledge, approval, and consent, the collection of a claim of the county of Lancaster against the commonwealth, and, by his labors, rendered subsequently to that date, secured the collection of said claim, the verdict must be for the plaintiff for such amount as the jury

believe from the evidence his services were worth to the county of Lancaster, with interest from June 20, 1887." Affirmed. [2]

" 4. If the jury believe that, after the expiration of plaintiff's term of office as solicitor for the county of Lancaster, a new agreement was entered into between him and the county commissioners, and that the services rendered by him for which he seeks compensation were rendered exclusively under the new agreement, the verdict of the jury must be in his favor for such a sum as under the evidence will properly compensate him for such service, with interest from June 20, 1887." Affirmed. [3]

Defendant's points were among others as follows :

" 2. There is no testimony in the case of a contract between plaintiff and the defendant other than that of June 28, 1882, and all the services rendered by the plaintiff must be regarded as having been rendered under said contract." Reserved. [4]

3. Request for binding instructions. Refused. [5]

Verdict for plaintiff for $6,923.56. Defendant moved for a new trial and for judgment n. o. v. Rules to show cause were granted and subsequently discharged in an opinion in part as follows, by ENDLICH, J. :

" Was there any evidence, proper for submission to the jury, in support of the plaintiff's principal contention ? The plaintiff, on June 28, 1882, while solicitor for the county of Lancaster, had been employed by resolution of its board of commissioners, to obtain from the commonwealth, in favor of said county, a credit settlement for overpaid taxes, upon a stipulated contingency of 25 per cent to cover his own compensation and all expenses. In November, 1882, the claim was rejected, and, on the first Monday of January, 1883, the plaintiff's term of office expired. After June 13, 1883, he, in conjunction with Mr. Hensel, again endeavored to obtain a settlement. These efforts were successful. On May 1, 1884, a credit was allowed to the county of $2,560. The plaintiff rendered his bill to it for 25 per cent of that amount, ' as per resolution of the board,' and received $640. On June 18, 1887. a further credit was settled in favor of the county for $20,823.50. The plaintiff demanded payment to him of 25 per cent of this amount, but was refused. He thereupon brought suit against the county, based upon the contract evidenced by the resolution of June 28, 1882. The trial took place in Chester county, resulting in a verdict for

plaintiff for the full amount of his claim with interest.   Judgment entered thereupon was, however, reversed by the Supreme Court, on the ground (1) that, the prosecution of the claim of the county against the state being within the sphere of the county solicitor's duty, for the performance of which a fixed salary was appointed by law, a contract between him and the county for additional compensation for such services was void and illegal, and incapable of ratification after the expiration of his term of office ; and (2) that there was no pretence of any new agreement subsequently made, on which, under the pleadings and evidence, the recovery could be sustained : Lancaster Co. v. Fulton, 128 Pa. 48.   Thereupon the plaintiff brought this suit to recover a reasonable compensation for services rendered to defendant, at its instance, request and employment, subsequently to the first Monday in January, 1883, in obtaining a credit settlement of $20,823.50 from the commonwealth in favor of said county, alleging an assumption on the part of the latter to pay him for said services the sum of $5,205.87½.   This assumption he has sought to establish, at this trial, by evidence that, on June 13, 1883, the then county commissioners made a new contract with him, whereby he was to secure the services of Mr. Hensel, as counsel for the county, in conjunction with him, to renew and push the claim rejected in November, 1882, and in the contingency of success to receive 25 per cent upon the amount of the settlement to be allowed, out of which he was to pay all expenses and compensate Mr. Hensel.

" Upon the proof of this new contract, as a new contract, it was agreed on both sides, depended his right to recover.   As to the amount, which, in the event of that right being made out, would be a fair compensation, the evidence, all on the side of the plaintiff, indicated an allowance of 25 per cent as reasonable and proper.   The case was submitted to the jury under a charge by no means favorable to the plaintiff, a point submitted by defendant as to the existence of any evidence of a contract other than that of June 28, 1882, being reserved under the authority of Chandler v. Ins. Co., 88 Pa. 223 ; Koons v. Telegr. Co., 102 Pa. 164.   The verdict, defective as to form, but unmistakable as to its intent, and accordingly moulded by the court, in the exercise of a power which is not now questioned, gave to the plaintiff a sum equal to 25 per cent upon

the amount credited to the county on June 18, 1887, with interest from that date. . . .

" The present case is a purely legal one. The issue as to whether the contract of June 28, 1882, was terminated, abandoned, and a new contract entered into, is not one to which the equitable rules concerning evidence to vary, add to, or alter a written agreement apply : Holloway v. Frick, 149 Pa. 178. The evidence adduced on the affirmative of that issue is partly circumstantial and partly direct. In so far as it is the latter, it consists of the testimony of the plaintiff himself. He affirms the fact of a meeting between himself and the board of commissioners on June 13, 1883, and narrates what took place. He says that he stated to them what he had done during the previous year, and that he had not been successful, that he had failed. This declaration, if it was made by him as testified, was capable of being regarded as a surrender of his employment under the resolution of June 28, 1882, and the commissioners were at liberty to consider their relation with the plaintiff under the contract evidenced by that resolution at an end, even supposing it to have been a legally binding one. 'I then told them,' he continues, 'that I desired to take in associate counsel ; I told them, that if they would agree to it, I would associate Mr. Hensel with me in the prosecution of the claim against the commonwealth.' That is to say, if the former part of his statement is to be understood as a declaration that his efforts were exhausted, his employment terminated, he nevertheless desired to be re-engaged on condition that Mr. Hensel be secured to co-operate with him. ' They were favorable,' he says, ' to the proposition, and asked upon what terms the services of Mr. Hensel could be procured. I said to them : " You pay me 25 per cent of the amount collected from the commonwealth, and I will compensate Mr. Hensel ; this to be in full for all costs and expenses, as well as all fees." They agreed to do it and authorized me to go ahead,' etc. If this is true, and the true construction of what precedes it is as above indicated, then we have here an unequivocal assertion of the making of a new contract, upon specified terms, on June 13, 1883. What was said and done, what was intended by what was said and done, are questions of fact for the jury : Forrest v. Nelson, 108 Pa. 481, 488 ; Maynes v. Atwater, 88 Pa. 496, 499.

" But there is more than this.  Being asked by defendant's counsel concerning the payment of $640 on May 1, 1884: ' Was that paid to you in pursuance of your contract of June 28, 1882,' the plaintiff says: ' I suppose it was paid to me in pursuance—I know it was paid to me in pursuance of an agreement that we had, that they made with me by which I was to retain Mr. Hensel,' etc.  ' Q. Was it obtained from them under your contract of June 28, 1882?  A. I say no, it was not.'  Defendant's counsel contend that this goes for naught, being the expression of a mere opinion.  I think not.  In Bank v. Kennedy, 17 Wall. 19, it was held competent to ask a witness who was a party to a transaction, and was present and was cognizant of the circumstances, on whose behalf a payment was made, whether it was made in consequence of a request, and what was its purpose and intent; and in Brunner v. T. & T. Co., 151 Pa. 447, our Supreme Court reversed because of the exclusion of an interrogatory as to the purpose with which an act was done by the deponent, and whether it was done in pursuance and in the line of his employment, which was ' the precise point to be settled.'  But, no matter whether this testimony would have been competent in chief or not, the questions which elicited it and which were so framed as to invite it, to be incapable of any other style of answer, were put upon cross-examination by defendant's counsel.  An objection like this, therefore, comes with ill grace and is entitled to no consideration.  Further on in his cross-examination, the plaintiff, in answer to a question whether there was a new agreement in May, 1883, says: ' No, sir ;  June 13, 1883, there was an agreement made, by which I was to employ Mr. Hensel.'  Again, referring to a period subsequent to the trial in Chester county, during which plaintiff explains he did not happen to think of the transaction of June 13, 1883, he says: ' I then recollected that we did really have a new agreement, that of June 13, 1883 ; ' and, in answer to the question, ' What else had you in your mind as the basis of your claim '— '. . . . the fact that on June 13, 1883, they entered into an additional agreement, another agreement, by which,' etc., concerning the transaction of the same day: ' The county commissioners agreed with me that I should retain Mr. Hensel and they would pay me 25 per cent.'  It is needless to multiply extracts

from his testimony, more or less pointedly asserting the conclusion of a new contract on June 13, 1883.

"Among the circumstances which corroborate him, one, at least, is worthy of special mention. The plaintiff, it is very clear, had no idea that the contract of June 28, 1882, was invalid, either as a contract for extra compensation or as a contract for a percentage. Apart from its invalidity, he had, under it, a perfect right to employ in his aid any lawyer or set of lawyers in Lancaster or elsewhere. He was assured a commission of 25 per cent in full of his services and all expenses. It was a matter of no concern to the county of Lancaster whether he should alone do the work and alone enjoy the reward, or whether, out of the commission secured him, he should pay any one else to do the work for him. Why, then, if that contract continued in force, is he found to go before the board and ask authority to employ Mr. Hensel, without asking for any increase of compensation? It is said that mere policy and courtesy towards his clients would have prompted him to inform the latter of his intention to associate other counsel with himself. But that is not what he did, if his testimony is to be believed. He asked them for a distinct agreement, binding upon himself as well as upon them, and obtained it. It is certainly not permissible to resist an obvious natural inference from the act of a party to the point of treating the same as a silly, unnatural work of supererogation. Viewed in connection with his previous statement to the commissioners that his efforts had failed, the claim been rejected, the natural inference from the act of the plaintiff now under discussion is, that he intended to be done with the old employment, and to start upon a new one in conjunction with Mr. Hensel. The natural inference from the fact that the commissioners inquired into the matter of compensation is that they so understood the situation; otherwise, if the old contract was to continue, they were not concerned upon that subject.

"In the light of Holloway v. Frick, supra, it may be questionable whether proof of the contract of June 28, 1882, raised any legal presumption that the relation between the parties continued to the end to be based upon it. Granted, however, that there was such a presumption—that the burden of overcoming it rested upon the plaintiff—that the evidence adduced for that

purpose was to be 'viewed with a considerable degree of sus-
picion:' Hunter v. Nolf, 71 Pa. 282, quoted in Lancaster Co.
v. Fulton, 128 Id. 48, 61—and that, therefore, no inference in
plaintiff's favor can be reasonably drawn from testimony in any
way consistent with that presumption; yet it needs no citation
of authority to show, that, in order to determine the question of
such consistency or inconsistency, the evidence in support of
the plaintiff's contention must be looked at as a whole, not in
detached portions.   The question is, Does it, as a whole, consist
with or oppose the presumption?—not, Does this or that por-
tion of it, omitting the rest, do the one or the other?   Apply-
ing this test, it is idle to say that the testimony adverted to,
taken, as it must be, for true, does not tend to refute the pre-
sumption mentioned.   True, there was (a) direct testimony to
the contrary; there were (b) circumstances developed whose
apparent tendency was, in my opinion at the time, very strongly
adverse to the plaintiff's theory; and there was (c) evidence of
previous statements and affidavits of the plaintiff himself, which,
to say the least, required explanation.

" (a) The direct testimony consisted of the denial by two of
the county commissioners of the plaintiff's account of what
took place on June 13, 1883.   The third commissioner, who,
according to the plaintiff's story, would have been the most in-
terested witness, was absent, nor was it shown that he was
subpoenaed, or that any effort was made during the trial to
procure his attendance.

" (b) The most significant circumstantial evidence opposing
the plaintiff's story consisted of the fact, that, between Novem-
ber, 1882, and June 13, 1883, he had not ceased busying
himself with the matter of the county's claim against the com-
monwealth; of the wording of his bill of May 1, 1884; and
of the similarity between the old contract and the new.

" (c) The fact that the first suit was brought by the plaintiff
distinctly upon the resolution of June 28, 1882, that in his affi-
davit of claim he set it forth as his cause of action, that on the
trial in Chester county, as is pointed out by Mr. Justice STER-
RETT in Lancaster Co. v. Fulton, supra, at p. 63, he testified
that all he had done was in pursuance of and under that con-
tract—all justly went to discredit his contention upon this trial.

" Yet each of the matters referred to under these heads taken

singly, and all of them collectively, were clearly matters for the consideration of the jury, together with the explanations offered by the plaintiff, in determining his credibility, the weight and effect of the circumstances corroborating his story, and the real truth of the case. So manifest is this, upon the most elementary principles, that I need refer particularly to but two items, to which defendant's counsel assigned a peculiar, and novel significance.

" That a substantial identity between the subject-matter, purpose, and terms of a prior contract, illegal and incapable of ratification, and those of a subsequent one alleged to be independent of and distinct from the former, is a suspicious circumstance and ought to be considered by the jury as a fact militating against him on whom rests the burden of proof, cannot be doubted: Hunter v. Nolf, 71 Pa. 282; Lancaster Co. v. Fulton, supra, p. 61. That there cannot, as a matter of law, be a new, independent contract between the same parties, touching the same subject, having in view the accomplishment of the same ultimate object, and stipulating for the same compensation, is a proposition for which no warrant has been shown in judicial decisions or in common sense. Moreover, whilst I was of a different opinion at the trial, I think it would be difficult to establish such an identity between the contract of June 28, 1882, and that testified to as having been made on June 13, 1883. Two contracts cannot be identical in terms where the consideration is different, where the parties contract in different capacities, and where the stipulated payment is different. The consideration for the compensation in the contract of June 28, 1882, was a service to be rendered by the plaintiff which he was bound to render without compensation, and therefore no consideration. The consideration in the contract of June 13, 1883, was (*a*) the rendition of services which he was under no duty to render, and (*b*) the procuring, at his expense, for the benefit of the county, of the services of another gentleman who was not bound to render them gratuitously. The capacity in which the plaintiff became a party to the contract of June 28, 1882, of which he could not divest himself in dealing with the county, and which, therefore, rendered the relation attempted to be assumed by him by virtue of the contract illegal and the basis of no valid claim, was that of county solic-

itor. The capacity in which he became a party to the contract of June 13, 1883, was that simply of an attorney at law, an employment of whom by the county, with the incident of liability to compensation, was altogether lawful: Chester Co. v. Barber, 97 Pa. 455. The reward stipulated in the contract of June 28, 1882, was 25 per cent payable to the plaintiff. He might, it is true, have employed assistance. But the county knew him only in the matter. Under the contract of June 13, 1883, he was obliged to procure the services of Mr. Hensel. The county virtually engaged both of these gentlemen, merely leaving the details of the arrangement with Mr. Hensel to the plaintiff. A reward of 25 per cent was agreed upon as compensation for both of them, to be paid, in the first instance, to the plaintiff. No one will doubt that, in the practical result to the plaintiff, the terms of this arrangement will be found to differ from what was contemplated by the contract of 1882. But, apart from that, a promise to pay a certain sum to one person is not the same thing as a promise to pay the same sum to two persons. Thus, as the case is now presented, there is not that analogy between its appearance and Hunter v. Nolf, supra, which was pointed out by Mr. Justice STERRETT in Lancaster Co. v. Fulton, supra, under the facts then developed. In Hunter v. Nolf, not only were the parties literally the same; and the terms identical, in the original illegal and in the alleged new contracts, but the consideration upon which both were based, and which gave rise to the illegality, continued the same. I cannot, therefore, look upon that case as applicable to the present one to the extent of forbidding, as a matter of law, the treatment of the contract of June 13, 1883, as something new, different from and independent of that of June 28, 1882, and untainted by its weakness. The question whether or not it was such was one of fact for the jury.

" Neither can the plaintiff's statements in the former case conclude him, or, as a matter of law, throw out his contrary testimony in this one. It is a mistake to treat those statements as part of his testimony at the trial of the latter, or as rendering that testimony inconsistent or contradictory. If there were any such confusions pointed out in what he swore to at this trial, it would have been the province of the jury to settle the doubt arising therefrom : Kohler v. R. R. Co., 135 Pa. 346, 357. A

fortiori must this be so where the doubt arises from contradic-
tory statements made upon previous occasions, not repeated at
this trial, but admitted as having been made, and attempted to
be explained. It was decided in Callan v. Lukens, 89 Pa. 134,
that a supplemental affidavit of defence is not insufficient sim-
ply because it sets up a new and different defence from that
made in the original affidavit, however suspicious such a per-
formance may be. Now, it is an elementary rule concerning
affidavits of defence, that, in order to be sufficient, they must
show a defence which is permissible and which a jury may con-
sider : Hendel v. R. F. A. Ass'n, 2 Dist. R. 116, and cases there
cited. It follows that testimony in support of an allegation in-
consistent with one previously made is nevertheless proper for
submission to the jury, the discrediting effect of the former ver-
sion being a matter for its determination.

" I am thus led to the conclusion that the principal question
submitted to the jury was in the case, and that it could not
have been withdrawn from the jury by the court without in-
vading the province of the former. There was, therefore, a
basis for an inference favorable to the plaintiff's contention. It
may have been a pretty narrow one. I am disposed, on a re-
view of the testimony, to think it was ample. But, whether
it was a sufficient basis was for the jury, and its conclusion
being conscionable, the verdict cannot be ignored or disturbed
upon the ground of insufficiency of the evidence upon the
question under discussion : Brunner v. T. & T. Co., per WIL-
LIAMS, J.

" 2. Were the questions to be decided by the jury properly
submitted ? The time has gone by, in this state, when a charge
might be convicted of error by selecting detached phrases or
sentences and subjecting them to a subtle criticism : Smith v.
Meldren, 107 Pa. 348, 352 ; Nevling v. Com., 98 Pa. 322, 335 ;
Totten v. Hicks, 3 Kulp, 60. Taking this charge as a whole,
it may well be that, had the result been unfavorable to the
plaintiff, he would have had good cause of complaint. But no
error has been pointed out prejudicial to the defendant. There
is nothing in the allegation that the charge authorized the jury
to compensate the plaintiff for services rendered before June 13,
1883 ; that they must be supposed to have done so ; that those ser-
vices having been rendered under the contract of June 28, 1882,

and incapable of compensation, the claim for them was illegal; that this claim being part and parcel of the entire demand, its illegality, under Spaulding v. Ewing, 149 Pa. 375, tainted the whole, etc. It would be more wearisome than difficult to point out the irrelevancy of this decision to the present case. It is sufficient to say that the jury, having been told that the claim was for services rendered subsequently to the expiration of plaintiff's term of office, which ended on the second Monday of January, 1883, was distinctly instructed that all services were to be taken to have been rendered under the contract of June 28, 1882, and irrecoverable, unless and until a new contract was shown, and that there was no evidence of such except what was alleged to have occurred on June 13, 1883. Moreover, it was testified that all the valuable services were rendered and all the effective work done after that date."

*Errors assigned* were (1) above ruling on evidence ; (2–6) instructions as above ; (7, 8) not entering judgment for defendant n. o. v.; quoting rulings and instructions.

· *Cyrus G. Derr* and *Hugh M. North, George A. Lane, E. K. Martin* and *George F. Baer* with them, for appellant.—The decision in Lancaster Co. v. Fulton, 128 Pa. 48, establishes the proposition that plaintiff's contract of June 28, 1882, was against public policy and void. The testimony in this case did not show any other contract, but simply an incidental iteration of the void contract. A contract cannot be proved by circumstances equally consistent with its existence or nonexistence: Smith v. Bank, 99 Mass. 605 ; Mead v. Conrow, 113 Pa. 220 ; Hunter v. Nolf, 71 Pa. 282.

*W. U. Hensel* and *J. Hay Brown, Ermentrout & Ruhl* with them, for appellee.—In Lancaster Co. v. Fulton, 128 Pa. 48, the court recognized that the services of plaintiff were " efficient and valuable ; " but stated that as to services rendered after the expiration of his term of office, under and in pursuance of the original and void contract, they could not be recovered under the pleadings and evidence in that case. In the present case there are different pleadings and different evidence.

In Nolf v. Hunter, 71 Pa. 282, an immoral or illegal consid-

eration ran through the whole contract.   In Spaulding v. Ew-
ing, 149 Pa. 375, proper professional services were so confused
with those which are forbidden, that they perished together.
Here the conditions which render the original contract illegal
were ended on Jan. 2, 1883.   Although the county had an at-
torney, it could employ other counsel : Smith v. Mayor, 13 Cal.
531 ; Chester Co. v. Barber, 97 Pa. 455.   Where work is done
by one party for another with the latter's consent and he re-
ceives the benefit of it, the law presumes a contract of hiring :
Hertzog v. Hertzog, 29 Pa. 465 ; Dil. Mun. Corp. § 386.

The court cannot draw conclusions of fact from the evidence :
Com. v. McDowell, 86 Pa. 377.   Every disputed fact must be
determined by the jury : Wilson v. Steamboat Tuscarora, 25
Pa. 317.   It is error, after submitting a particular fact to the
jury and after the fact has been found by them, to enter judg-
ment n. o. v. for the party against whom it was found, on the
ground that the evidence was insufficient to establish it : North
American Oil Co. v. Forsyth Bros., 48 Pa. 291.   Where there
is evidence justifying an inference of a disputed fact, it must
be submitted to the jury : Reno v. Moss, 120 Pa. 49 ; Patter-
son v. Dushane, 115 Pa. 334 ; School Furniture Co. v. School
District, 122 Pa. 501 ; Howard Express Co. v. Wile, 64 Pa.
201 ; Terrerri v. Jutte, 159 Pa. 244 ; 3 Graham and Water-
man on Trials, 1239.

OPINION BY MR. JUSTICE GREEN, July 11, 1894 :

As this case is now presented, and as it was submitted by the
learned court below, it exhibits but a single question of pure
fact.   The plaintiff alleges, and positively testifies, that on
June 13, 1883, and several months after his relation as county
solicitor had ceased, he made a new contract with the county
commissioners for the rendition of his services in the prosecu-
tion of the claim of the defendant for the collection of overpaid
taxes.   He describes in his testimony what took place at that
time.   He said: "I stated to the board of county commis-
sioners,—there was a full board in session, Myers, Summy and
Hildebrand, Myers was president of the board,—I stated to
them that my efforts before the board of revenue commissioners
of the commonwealth, and before the board of public accounts
had not been successful; I stated that I had endeavored to

have a law passed authorizing suits against the commonwealth by counties to recover this money, and endeavored to have another bill passed authorizing the board of public accounts to give credit settlements in cases like ours, but I had failed. I then told them that I desired to take in associate counsel; I told them that, if they would agree to it, I would associate Mr. Hensel with me in the prosecution of the claim against the commonwealth. They were favorable to the proposition and asked upon what terms the services of Mr. Hensel could be procured. I said to them : ' You pay me 25 per cent of the amount collected from the commonwealth and I will compensate Mr. Hensel; this is to be in full for all costs and expenses as well as all fees; this if we recovered, and we would make no charge if nothing was recovered.' Q. What, if anything, did they or any of them say to you in response to that proposition? A. They agreed to do it and authorized me to go ahead and engage Mr. Hensel, and that I should have 25 per cent of the amount collected, and I should compensate Mr. Hensel and pay all costs and expenses."

It seems that the principal services performed by the plaintiff were rendered after this time, and that they were successful. The learned judge of the court below very carefully instructed the jury that there could be no recovery upon the contract made on June 28, 1882, because of the plaintiff's relation as county solicitor at that time. And he also most cautiously and clearly instructed them that there could be no recovery except upon a contract made after January, 1883, and only for services rendered in pursuance of such contract. He called the attention of the jury to the conflict of testimony upon this important subject and correctly instructed them as to their duties in such a state of the evidence. It is impossible for us to say that there was any error in all this. The testimony of the plaintiff was direct, positive, explicit, minute and emphatic. The court could not possibly withdraw it from the jury, but was bound to submit it to them. This was done in a perfectly fair and impartial manner of which no complaint has been, or could be, made. The jury has found for the plaintiff and has thereby declared their belief in his testimony, as they had a perfect right to do. They are the sole judges of the credibility of witnesses as we have said very many times, and it is not in our

power to defeat their verdict upon any theory that they should have believed differently. The very elaborate and exhaustive opinion of the learned court below, on the rules for a new trial and to enter judgment for defendant non obstante veredicto, is a perfect vindication of the action of the court on the trial and is a satisfactory exposition of the case on its merits of law and fact. We discover no error in any of the assignments and must therefore affirm the judgment.

Judgment affirmed.