## APPEALS OF THE FOREST OIL CO. ET AL.

FROM THE DECREES OF THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 20, 1887—Decided January 3, 1888.

1. Substitution or subrogation to the rights of a plaintiff in a judgment or execution cannot be decreed in favor of a petitioner, until the creditor has received payment; and a tender of the debt, interest and costs, accompanied with a demand for an assignment of the security or writ, is not the equivalent of payment which will entitle to subrogation.

2. In a proceeding for stay of execution process and subrogation to the plaintiff's rights, instituted by the owner of an oil and gas leasehold upon land advertised at sheriff's sale on a judgment entered prior to the creation of the leasehold, unless the petition excuse any laches in the application and show on its face equities superior to those of the judgment plaintiff, with the terms of the lease and performance of its covenants on part of the petitioner, it is not error to deny subrogation and to refuse to interfere with the sheriff's sale.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ.; absent.

Nos. 211, 212 October Term 1887, Sup. Ct.; court below, Nos. 95 A. D., 69 E. D., August Term 1887, C. P.

A judgment for $1,149.50, in favor of Rebecca Nesbit, for use of J. P. Miller, against R. D. Martin and W. W. Martin, entered to No. 95 January Term 1883, was a lien upon a tract of land owned by R. D. Martin in Buffalo township. On an execution issued upon this judgment a levy had been made and a sheriff's sale of said land advertised to take place on Monday, August 15, 1887, when, after an offer, the sale was adjourned until 1 P. M., Wednesday, August 17th. On the last named day, before the hour of sale, on petition of The Forest Oil Co., The Natural Gas Co. of West Va. and A. W. Mellon, presented at chambers, the court ordered a stay of the sale until 9 A. M. on Friday, August 19th, when the petitioners would be allowed to apply in open court for a rule upon the execution-creditor to show cause why he should not accept the amount of the debt, interest and costs on the said execution and assign the same to the petitioners.

On August 19, 1887, the said petitioners together with the Fisher Oil Co., presented a petition, all the facts set forth in which were as follows:

That on February 4, 1884, R. D. Martin, defendant in said judgment, by articles of agreement conveyed the tract referred to, to C. D. Robbins, for the purpose of developing for oil and gas, for a period of twenty years from the date of said agreement, which was recorded on May 4, 1886, in deed book 136, p. 153; and that by divers good and lawful conveyances the petitioners were the joint owners of said leasehold estate, and had expended large sums of money in developing the same.

That before the recording of said lease the judgment referred to was entered as a lien on said land belonging to R. D. Martin, as well as against W. W. Martin; and that on July 23, 1887, the use plaintiff released the lien thereof from the land of W. W. Martin, allowing it to remain against the farm of R. D. Martin now occupied by the petitioners, and at once the writ of fieri facias referred to was issued upon said judgment, ostensibly for the purpose of collecting the amount thereof, with interest and costs thereon; by virtue of which writ the sheriff had levied upon the farm of R. D. Martin, occupied by the petitioners, and had advertised a sale thereof on August 15, 1887, without notice to the petitioners, as terretenants or otherwise, which sale had been adjourned to 1 P. M. on August 19th.

That the petitioners, for the purpose of protecting their vested estate in said land, on August 17, 1887, tendered to the use plaintiff in said judgment the full amount of the debt, interest and costs thereon, and requested that the said judgment be assigned to them, without recourse, the petitioners intending, had such assignment been made, to stay execution thereon and prevent a sale of said land which would have divested their estate therein, which tender and assignment the use plaintiff refused and denied; and that the petitioners were informed and believed that the purpose of the said execution was not merely the collection of the debt and interest secured by the said judgment, but the use of it as a means of destroying the estate and divesting the title of the petitioners in said land.

That the sale of said property under said writ would be greatly injurious to the petitioners, jeopardizing their title to said leasehold, since, to retain their estate therein, they would be compelled to pay an exorbitant price for the land divested of liens; that they were ready and willing to pay the amount of the debt, interest and costs upon said judgment and writ into court, and also any other debt, interest and costs, secured by judgment or otherwise as a lien against the land prior to the recording of the lease to C. D. Robbins and in existence as a lien when said fieri facias was issued, on being subrogated to the rights of such lien creditor.

Wherefore the petitioners prayed: 1. That the use plaint-

iff in said judgment be compelled to receive the money due on said judgment, with costs, and assign the judgment.   2. That said execution be stayed till the use plaintiff execute such assignment on receipt of said money.   3. That an order be made directing that the petitioners, on paying to the sheriff or into court the amount of said judgment and costs, be subrogated to the rights of the use plaintiff.   4. Other relief.

On the presentation of this petition, the use plaintiff appeared by attorneys and objected.   The Union Central Life Ins. Co., a creditor in a judgment subsequent to the execution of said lease, appeared by attorney and moved the court to refuse a rule and to dismiss the petition on the ground, (1) that petitioners were guilty of laches; (2) they had not set out a copy of their lease; (3) they had not shown grounds for equitable relief.   After argument, the court made a decree refusing a rule and dismissing the petition, to which the petitioners excepted.

On August 23, 1887, the same petitioners presented in open court another petition, setting forth the same facts averred in the former one, and in addition thereto the following:

That after the recording of the said lease between C. D. Robbins and R. D. Martin, other judgments, identified by number and term, were entered as liens against said land, on which executions to Nos. 9, 56 and 57, August Term 1887, had been issued prior to the execution heretofore referred to; that on August 19, 1887, to which day the sheriff's sale had been adjourned by the order of the court, the petitioners, in order to prevent a sale, tendered to the sheriff the full amount of the debt, interest and costs on all the writs in his hands, which tender at the suggestion of the use plaintiff in the judgment first referred to was refused; that at the hour of sale, the petitioners read a notice, a copy being attached, notifying bidders of said tender and that an application would be made to have the sale set aside, but that the sheriff had proceeded and had sold the lands levied upon to James Kuntz, Jr., who was present at the reading of said notice and cognizant of the facts averred in this petition.

Wherefore, the petitioners prayed: 1. That the said sale be set aside. 2. That the sheriff be compelled to receive the amounts due upon the executions in his hands and the peti-

tioners be subrogated to the rights of the execution-plaintiffs. 3. That petitioners might pay into court the amounts due upon said executions and that the same be stayed until the plaintiffs assign them to petitioners. 4. That the sheriff be restrained from receiving the purchase money from the purchaser, or from distributing it to the lien creditors of R. D. Martin. 5. For other relief. This petition was ordered to be filed.

On August 24, 1887, the petitioners moved the court that the decree filed on August 19th, dismissing their petition for subrogation and refusing the rule thereon, be lifted and set aside, and instead thereof a rule be granted, founded upon the averments of said petition, upon the use plaintiff, R. D. Martin, defendant, as well as upon all other lien creditors of said R. D. Martin. The same day, the petitioners were allowed to amend their petition filed August 23d, by adding a copy of the lease from R. D. Martin to C. D. Robbins, and a supplemental petition was filed. moving for a rule, upon the facts averred in said petition, upon the lien creditors of R. D. Martin, the sheriff and the purchaser, to show cause why the prayers of said petition should not be granted. The same day, certain of the lien creditors and the purchaser at the sheriff's sale objected to the granting of said rules and moved the court to take the acknowledgment of the sheriff's deed. The copy of the lease was not filed until August 26, 1887.

On August 26, 1887, the court, McIlvaine, P. J., delivered an opinion, and, after discussing the cases of Kyner v. Kyner, 6 W. 227; Hunter's App., 40 Pa. 194; Lyon's App., 61 Pa. 15, ruled that the decree of August 19th was not erroneous in the light of the facts set forth in the original petition, or in the amended petition of August 23d; and, refusing the petitioners' motion to set aside the said decree as well as their motion to set aside the sheriff's sale, confirmed the sale and received the acknowledgment of the sheriff's deed to the purchaser. Thereupon the petitioners took these appeals, assigning for error the decree refusing the rule upon the petition for subrogation and the decree refusing to set aside the sheriff's sale, etc.

*Mr. T. F. Birch* (with him *Mr. Albert Sprowls* and *Mr. W. F. McCook*), for the appellants:

Arguments.

1. The petition alleged such facts as entitled the petitioners to be subrogated to the rights of the use plaintiff in the judgment antedating their lease ; they were not strangers or volunteers : 3 Pom. Eq. J., § 1212, n. ; Cóttrell's App., 23 Pa. 294 ; Dorr v. Shaw, 4 Johns. Ch. 17 ; McCall v. Lenox, 9 S. & R. 309 ; Kyner v. Kyner, 6 W. 221 ; Knouf's App., 91 Pa. 78. The petitioners' right in this land is an estate, not a lien : Duke v. Hague, 107 Pa. 57. The whole right of the lien creditors was to use their judgments to enforce payment of the debts and interest secured thereby, not to use the executions to divest the estate of the petitioners. The petitioners were bound to pay the judgments prior to their lease or lose their title : Lyon's App., 61 Pa. 15 ; Champlin v. Williams, 9 Pa. 341 ; Mosier's App., 56 Pa. 76. Equity would suppose that to have been done which equity would decree : McCall v. Lenox, 9 S. & R. 314.

2. The tender to the sheriff was equivalent to a satisfaction of the executions on which the land was sold. The purchaser had no countervailing equity, as he heard the notice to the bidders. Besides, he was made a party to the proceedings, and as such should have been required to answer. On exceptions to a sheriff's sale, the court will hear everything that can be alleged against the validity or regularity of the proceedings or the conduct of the sheriff, the plaintiff or the purchaser : Vastine v. Fury, 2 S. & R. 426 ; Shields v. Miltenberger, 14 Pa. 76. A sale on a judgment which has been satisfied is a nullity, though the defendant had assented : Jackson v. Anderson, 4 Wend. 475 ; Hoffman v. Strohecker, 7 W. 86 ; McFee v. Harris, 25 Pa. 102 ; Jackson v. Morter, 82 Pa. 291 ; Swan v. Saddleman, 8 Wend. 677 ; Vanernan v. Cooper, 4 Clark 371. There can be no objection to setting aside a sheriff's sale where the deed is still in the hands of the sheriff ; much must depend on whether the sale or acknowledgment was made through fraud, and with what promptness the application is made : Jackson v. Morter, supra ; Jackson v. Anderson, 4 Wend. 475 ; Requa v. Rea, 2 Paige 341.

*Mr. J. P. Miller* and *Mr. A. M. Todd* (with them *Mr. J. W. Donnan*), for the appellees :

1. Until the creditor has been fully paid subrogation cannot

be had on any terms whatever: Kyner v. Kyner, 6 W. 227; Bisph. Eq., 18. The execution-plaintiff had not been paid, and the tender made to him on August 17th, with the demand that he should assign the writ, was not in law a payment. The condition that the debt should be assigned was itself sufficient to defeat the plea of tender: 2 Greenl. Ev., § 605; Sanford v. Balkley, 30 Conn. 344; Perkins v. Beck, 4 Cranch C. C. 68; Richardson v. Boston Chem. Lab., 9 Met. 42. A tender to be a bar must be made by the debtor or his legal representative: 2 Chit. Con., 1186; McDongald v. Dougherty, 32 Cal. 168; if made by a stranger, his right to make payment must be disclosed at the time of tender. There was then, in law or actually, no payment of the debt entitling to subrogation.

2. The case is not within the special cases provided for by the act of June 24, 1885, P. L. 157, and therefore the Court of Common Pleas had no power to make an order requiring the execution plaintiff to accept payment and assign the lien and writ to a stranger to the judgment. His rights must be asserted by original bill in equity: Dent v. Ross, 35 Pa. 338.

3. Though a court of law may exercise equitable jurisdiction over the execution of its own judgments and may stay indefinitely, which would be the subject of revision: Patterson v. Patterson, 27 Pa. 40; yet when the application for relief is made on purely equitable grounds, as in this case, and is refused, the determination of the lower court is a matter of discretion and not subject to review: Gordonier v. Billings, 77 Pa. 501; s. c., 89 Pa. 528; Frauenthal's App., 100 Pa. 290; Williams v. Butcher, 1 W. N. 304.

4. The power to stay executions should never be exercised unless the case is plain and the equity of the petitioner free from doubt or difficulty, and set out upon the pleading in averments full, unobscure and unambiguous: Patterson v. Patterson, 27 Pa. 41; Bardsley v. Delp, 88 Pa. 420; 1 Chit. Pl. 237; Green v. Covilland, 70 Amer. D. 725. The petitions presented did not show on their face any sufficient equity; no copy of the lease was set out; the fact that a lease had been made was of itself insufficient to justify the court in determining that it was enforceable as a valid subsisting incumbrance. The copy of the lease, filed after the last petition was

presented, was unaccompanied by any averments sufficiently showing performance of the covenants thereof by the lessees. The lease is now before this court, and we submit that it is such that without the averments of performance, equity, under Miller v. Henlan, 51 Pa. 268; Brown v. Vandergrift, 80 Pa. 145 ; Munroe v. Armstrong, 96 Pa. 307, would have sustained a forfeiture, if it had contained a clause of forfeiture, and this court will not in any way aid in its preservation or enforcement.

5. When the petitioners on August 26, 1887, moved for the rule upon the execution plaintiff, Martin, the defendant, and the lien creditors generally, they were too late, as the purchaser having paid the purchase money had acquired a vested interest in the property sold : Young's App., 2 P. & W. 380. The attempt now is to bring before this court the propriety of the acknowledgment of the sheriff's deed, which cannot be done : Reese v. Berryhill, 1 W. 263 ; Sloan's Case, 8 W. 194; Young's App., 2 P. & W. 380 ; Jackson v. Morter, 82 Pa. 291.

OPINION, MR. JUSTICE PAXSON :

Subrogation is a right arising in pure equity and benevolence. It is an equitable result, and depends, like other controversies in equity, on facts to develop its necessity in order that justice may be done. To entitle a party to subrogation his equity must be strong and his case clear. It is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the principal debtor, and by the use of which the party paying may thus be made whole; Bispham's Equity, 18. But until the creditor has been fully paid substitution or subrogation cannot take place upon any terms whatever: Kyner v. Kyner, 6 W. 227.

In this case it is not claimed that Miller, the execution creditor, has been paid his debt. It is alleged, however, that there was a tender, which is the equivalent of payment. We do not so regard it. The tender was not unconditional. It was accompanied with a request or demand that Miller should assign the judgment. The petitioner was not in a position to make such a demand. Miller was under no obligation to as-

sign his security. Any demand for a receipt, discharge or assignment of the debt, renders the tender invalid: Sandford v. Balkley, 30 Conn. 344; Perkins v. Beck, 4 Cranch C. C. 68; Richardson v. Boston Chemical Laboratory, 9 Met. 42.

The petitioners were not vigilant in asserting their supposed rights. The real estate was advertised to be sold by the sheriff on August 15th. He adjourned the sale until August 17th. The alleged tender to Miller was made about two hours before the time fixed for the sale, and upon its being refused the parties applied to the court to postpone the sale until they could have time to prepare a petition for subrogation. The court gave the time asked for, and fixed August 19th, at 12 o'clock, noon, for a hearing, and directed the sheriff to adjourn the sale to the same day at one P. M.

When a court is asked to interfere with a judicial sale two hours before it is to take place, the reason why such application was not made at an earlier day should clearly appear. The only excuse for the laches of the petitioners is the averment in the petition that the sheriff's sale was advertised "without notice to your petitioners, as terre-tenants or' otherwise." This is an evasive averment. It is nowhere alleged that they did not know of the sale.

The application for subrogation was resisted by all the lien creditors and the defendant in the execution. It is easy to understand why the defendant opposed it. He was the owner of the farm upon which the oil lease, owned by the petitioners, was given. His farm was heavily incumbered. Miller's judgment was the first lien and antedated the lease. The other judgments were subsequent to the lease. A sale upon the Miller judgment would discharge the lease as well as all the other liens, and thus make a clear title. It was his interest to have it so sold.

What was the equity of the petitioners that would enable them to override all the other equities in the case? We must judge of this by what appears in the petition. We have nowhere else to look for it.

The petitioners aver that they were the owners of an oil lease upon said premises, dated February 4, 1884, and having twenty years to run: "that by divers good and lawful conveyances your petitioners are at the present time joint owners of said

leasehold estate for oil and gas purposes, . . . have expended large sums of money in developing the same," etc. No copy of the lease was attached to the petition, nor was there any summary of its contents. After the subrogation had been refused, and a petition had been filed to set aside the sheriff's sale, a copy of the lease was filed as an amendment to the last-named petition, and from it we learn that the lease was dated February 4, 1884; that the lessees covenanted to "commence operation for said mining purposes within eight months from the execution of this lease on some one of the farms leased by second party in this township. And when oil in paying quantities is found, then second party agrees to commence operations within sixty days on the next adjoining farm leased, and so on till all lands in this township are tested to success or abandonment."

This branch of the case must be decided upon the facts as they existed at the time the subrogation was refused. The court was asked to interfere at the last moment with a sheriff's sale, and to make an order of subrogation against the consent of all other parties in interest, with no facts before it save the unsupported and vague allegations in the petition. The court was not even furnished with a copy of the lease that it might judge of the interest or rights of the petitioners under it. There was not even an averment that a consideration had been paid for the lease, or that a dollar had been expended upon this particular property. When, therefore, the court heard the application for subrogation on August 19th, it had nothing before it which would have justified such an order, or if it had, it does not appear in this record. We are of opinion that the court below did not err in denying subrogation and in refusing to further interfere with the sheriff's sale.

This brings us to the second branch of the case. It appears that on August 19th, after the refusal of the court to interfere, the property was sold by the sheriff to James Kuntz for $10,050. Notice was given at said sale by the attorneys for the petitioners: "that the sheriff has been offered and tendered the full amount of the debt, interest, and costs to satisfy the writ or writs, upon which this sale is being made, and they (the bidders) therefore purchase the same at their peril, as the court will be asked to set said sale aside." The purchaser was

present when this notice was given. He also knew, or is supposed to know, that within the hour the court below had refused subrogation, and declined to interfere with the sale, upon the very questions embraced in the notice. An application was made by the petitioner to set the sale aside, substantially upon the same grounds as are contained in the original petition, which was refused by the court; the purchase-money was paid, the sale confirmed, and the sheriff's deed acknowledged. We see no error in this. The court having properly dismissed the petition for subrogation, the sale naturally followed, and the rights of the purchaser attached. It is true he had notice. But notice of what? Of matters which had been passed upon by the court adversely to the petitioners. It cannot be said that he was not a good-faith purchaser, or that he is affected by the notice. We see nothing to justify us in interfering with the discretion of the court below in this matter.

> The decree is affirmed, and the appeal is dismissed at the costs of the appellants.

MR. JUSTICE STERRETT dissents.