BELL v. MAST et al. (No. 1686.)

Court of Civil Appeals of Texas. Beaumont.
April 27, 1928.

Rehearing Denied May 23, 1928.

1. Tender ⬧⟹29—Evidence of tender of payment before note was placed in attorney's hands for collection held insufficient for jury.

Evidence held insufficient to take to jury question of defendant's tender of amount due in payment of note sued on before it was placed in attorney's hands for collection, when principal and interest amounted to considerably less than amount recovered.

2. Tender ⬧⟹9—Tender of payment before all installments were due is no defense to action on note.

Tender of payment of note before all installments were due is not available as defense in action thereon.

3. Tender ⬧⟹11—Attorney's offer to purchase client's note for another client was not "tender" of payment.

Offer of maker's attorney to purchase note sued on for another client did not constitute a "tender" of payment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tender.]

Appeal from District Court, Nacogdoches County; C. A. Hodges, Judge.

Action by L. B. Mast and another against M. E. Bell. Judgment for plaintiffs, and defendant appeals. Affirmed.

Adams & McAlister, of Nacogdoches, for appellant.

J. J. Greve, of Nacogdoches, for appellees.

WALKER, J. This appeal is by appellant, M. E. Bell, from a judgment upon an instructed verdict against him in favor of appellees, L. B. Mast and J. R. Gray, upon two promissory notes, the basis of this action, one note for $400, amounting, principal, interest, and attorney's fees, to $656.34, and the other a vendor's lien note for $450, amounting, principal, interest, and attorney's fees, to $788.51. On the vendor's lien note appellees were given all the relief prayed for. Appellant makes no complaint against the judgment on the $400 note, but insists that, after the maturity of the $450 note, and at a time when the principal and interest amounted to only $598.25, and before the institution of this suit, and before the note was placed in the hands of an attorney for collection, he tendered the full amount due thereon to appellee in payment and satisfaction of this note. This was the issue made by his pleadings, but at the conclusion of the evidence the court peremptorily denied this plea, and instructed judgment against him. On this appeal he complains only of this ruling, insisting that the court on the uncontroverted evidence should have sustained his plea of tender, and instructed a verdict in his favor on this issue, thereby rendering judgment in appellees' favor for a foreclosure of the lien for $598.25, or, in the alternative, the issue of tender should have been submitted to the jury. The evidence was as follows:

The $450 vendor's lien note was dated November 3, 1923, due $112.50 November 3, 1923; $112.50 November 3, 1924; $112.50 November 3, 1925; and $112.50 November 3, 1926. No payment was ever made by appellant on this note. Appellees, the holders, did not exercise the option given them to declare the unmatured payments due prior to the institution of this suit on the 26th day of August, 1926. The case was tried on an amended petition, filed the 18th day of February, 1927. In the summer of 1925, before the maturity of the two last payments, appellees visited appellant at his home on the land covered by the lien in controversy, and demanded a settlement of the $400 note, offering to extend the $450 vendor's lien note. In this connection appellees insisted that the $400 note was also a lien on the land. As to the details of this conversation, Mr. Gray, one of the appellees, testified:

"Mr. Mast and I went to Mrs. Bell's place or house some time in the early summer of 1925.

That was before suit was filed. They offered at that time to take care of the land note, but not the house note. As to whether they agreed then and told us that they would borrow the money to take up the land note, I will state that they had no conversation like that, or anything like that. They agreed that they could not pay both of them. I expect it is a fact that we told them we would not allow them to pay out on the house note until the other note was paid. Mr. Bell never denied that he owed the $400 note. As to whether he told me that he would pay it off, and that he wanted to get rid of the lien on his homestead, and wanted to pay it off of the homestead and give them a rock of refuge, I will state you told me that; he did not. You represent him, and he comes in his pleadings, and says he owes us the $400 note and got the money from Mr. Hoya. As to how long he had been borrowing money from Mr. Hoya, I will say, I think ever since I have been in the office, in 1915. I am not sure of that, but I know it is a long time. As to whether there is no question about him offering the money on the land note, I will say, No, sir; he never offered me the money. As to whether you offered me the money for the note, and whether you wrote me that letter, and whether, in other words, you wanted the note, I will state that you seemed to; yes, sir. This 50 acres that they bought from Mr. George Smith, the place now comes out to the road. He only owns this 50 acres.

"On our visit to Mr. Bell's house, he did not in our presence have the conversation that Mr. Adams referred to. We made him a proposition of what we would like for him to do, and he said he would come in and see me about it, and he led me to believe that he was satisfied about the matter, and was coming to town to fix up the affair. I had at that time offered to extend the land note for him. He did not come in and have that done. After that, I think I saw Mr. Bell on the streets near the Buick Automobile Agency and he told me that Mr. Adams told him not to do anything about it."

Appellant testified:

"Mr. Mast and Mr. Gray came to see me, and I agreed that day about the payment of the note. They came out there, and asked what I aimed to do about it, and I told them that, as far as I knew at that time, I was going to pay off the land note. I then and there offered to pay the land note. I did not have all of the money on hand, but I had arrangements made to get the money. When I told him that I would pay it, I knew where I could go and get the money. They refused to take the money for the land note and let the other off; they wanted me to pay the $400 note—the cash note. My wife would not agree to pay them until we paid the vendor's lien note. When I bought this on the third day of November, 1922, that was adjoining my 110 acres. I never did sign or execute any kind of an agreement that this $400 would be against that place. These papers that you have shown me are receipts. I left that money with you on those dates mentioned there."

Judge Adams, attorney for appellant, afterwards and before the filing of this suit, called upon the appellees, and proposed to take up the note for another party. His offer was to

pay appellees the full amount of the note on condition that they transfer it to a third party. At that time the note, principal and interest, amounted to $598.25. While the offer as originally made was verbal. Judge Adams and appellees afterwards reduced it to writing by the following correspondence, which, as we understand, fully states the offer made on behalf of appellant and appellees' refusal to accept it. The first letter is from appellees to Judge Adams:

"October 2, 1925.

"Mr. S. M. Adams, City—Dear Sir: Confirming my telephone conversation with you, will advise that we do not care to sell the M. E. Bell land note, which you offered to buy for Mrs. Acrey. Of course, if Mr. Bell wishes to pay off this note it is a different matter, but as Mr. Hoya loaned Mr. Bell $400.00 with which to build a house on the land upon which the note Mrs. Acrey wishes to buy, holds a lien, we do not care to sell the land note unless your client will also buy the note we hold for the $400.00 loan.

"I would also state that it is not our policy to sell any note unless first requested to do so by the maker of the note. We have more applicants for loans than we can accommodate, and if Mrs. Acrey is looking for some good notes, I will be glad to direct such persons to you as we cannot supply.    Yours truly."

Judge Adams' reply was as follows:

"S. M. Adams, Attorney at Law, Nacogdoches, . Texas.

"Oct. 3, 1925.

"Re the payment of land note held by you against M. E. Bell.

"Mr. Roy Gray, City—Dear Sir: This answers yours of the 2d instant regarding the above and you are advised that I have been requested by Mr. Bell to pay you the amount of his land note and by virtue of said request I have the money ready to pay the same if you will surrender the note to me.

"In the paying of the same it is to take the same out of your hands, as Mr. Bell is having this note carried by another person, and the money that I have is that of another person, and this request is made to the special instance and request of Mr. Bell.

"I have tendered to your partner, Mr. Mast, also half owner of this note, the money for the land note and it was tendered on September the 30th and refused, and I now here tender the same to you, as I did in our telephone conversation, and if you desire to accept this payment would be glad that you advise me as if not I want to surrender the money to the party from whom Mr. Bell got it, as it is not his money, but is left with me to take up the note and when taken up surrendering the land note to the party purchasing same.

"I note that you state that it was not your policy to sell the note unless first requested to do so by the maker, and this is a request by Mr. Bell that you surrender the note to me, and upon your expressing a willingness to do so will be glad to pay the amount to the 30th of September, but no further, as it was on this day that I tendered the money to Mr. Mast for the note.

. "I note that you say Mr. Bell owes you four hundred & 00/100 ($400.00) dollars for the building of a house on this land, and this Mr. Bell does not deny, but is a note that can in no wise affect his homestead and he is desirous of raising the note against his land, and has done all that any person can do to pass the note against his homestead, in that he has tendered to you and to Mr. Mast the money against his homestead and yet the same is refused by you and for reasons that I cannot understand, as I know you and Mr. Mast both are men that understand that the four hundred & 00/100 ($400.00) dollars note cannot be collected in any proceedings against his homestead and it strikes me that somebody is letting their venom get away with them.

"I note with a good deal of interest that you state that you have more applicants than you can accommodate and that if Mrs. Acrey desires good notes you will be glad to refer them to her, and this I do not believe should be any interest of yours, as she might in return say to you that she could refer quite a bunch to you, and many of whom you would certainly be glad to take care of, but this only shows that there is behind the matter of refusing to accept the money from Mr. Bell in order that those whom he is not afraid of may carry his note against his homestead, as he is a poor man and in good times desires to pay up with safety a refuge in which to embark in time of storm, and judging from your letter and conversation with Mr. Mast, I think he is showing good wisdom.

"Asking you to inform me the amount due up to the 30th of September in order that I may know the exact amount that was tendered to Mr. Mast, in that he and I had an agreement that the amount was tendered and refused; hoping that you will do the right thing in this matter by Mr. Bell and on receipt of this letter will be glad to hand to you the amount due on the notes if you will surrender them to me to be delivered to the party from whom the money is gotten or to be gotten, as I now here tender you the full and just amount of principal and interest to September 30th last; kindest personal regards, I am

"Yours sincerely,    S. M. Adams,
"SMA:AM    By A. M.".

Opinion.

[1, 2] On the facts stated, the court correctly instructed a verdict against appellant's plea of tender. The facts as summarized did not raise that issue in appellant's favor. While the conversation between appellees and Mr. Bell at his home did not raise the issue of tender, yet, had it done so, the tender was not available as a defense, since at that time all the installments were not due, and no tender was made of the past-due installments. The principle was thus stated in Shipp v. Anderson (Tex. Civ. App.) 173 S. W. 598, quoting the syllabus:

"A debtor cannot, before the maturity of his debt, compel his creditor to accept payment, and a tender before maturity is without effect."

[3] The negotiations between Judge Adams, representing appellant, and the appellees did not constitute a tender. He did not offer to pay up and discharge the note, but only to

purchase the same for another client. An offer to purchase is not a tender of payment, and is therefore, without effect. In Rutherford v. McGee (Tex. Civ. App.) 241 S. W. 629, it was said:

"We have found no case in which a tender was held effectual when made upon a condition that the creditor perform an act not contemplated by the obligation to discharge which the tender was made, and which the debtor had no right to demand."

It was certainly not within the contemplation of the parties, at the inception of the indebtedness, that the holder was to transfer this note to another party. In Stephens v. Reik (Tex. Civ. App.) 247 S. W. 627, it was said:

"It was not sufficient to simply say conditionally what he was ready and willing to do, but the time had arrived in the progress of the matters then pending when he must avail himself of the rights which the law and his contract gave him, by then tendering his money to discharge the indebtedness and notes then due."

This last case directly affirms the proposition that the offer must be to "discharge" the indebtedness. The principle was thus stated by the Superme Court of Pennsylvania in Forest Oil Co.'s Appeals, 118 Pa. 138, 12 A. 442, 4 Am. St. Rep. 584:

"In this case, it is not claimed that Miller, the execution creditor, has been paid his debt. It is alleged, however, that there was a tender. * * * We do not so regard it. The tender was not unconditional. It was accompanied with a request or demand that Miller should assign the judgment. The petitioner was not in a position to make such a demand. Miller was under no obligation to assign his security."

Affirmed.