## Thomas et al. v. Monroe County

*C. Edward DePuy*, petitioner, p. p.

*Leo A. Achterman*, petitioner, p. p.

*David B. Skillman* and *Arlington W. Williams*, for respondent.

SHULL, P. J., August 25, 1943.—The matter before the court arises, first, upon a rule to show cause why the order of court dated November 9, 1942, directing that the amount of damage awarded to C. J. Neyhart and the amount of damage awarded to Emanuel Miller, lessees of part of the premises of Ruth Thomas, substituted plaintiff for E. E. Hooker, be paid to Wilton A. Erdman, surviving executor and trustee under the will of Edward E. Hooker, Sr., mortgagee, should not be amended to subrogate petitioners to the said mortgage in the net amount awarded to petitioners and directed to be paid to the credit of said mortgage; second, upon a petition to the court to award counsel fees to Leo A. Achterman, Esq., counsel for Emanuel Miller, from the damages awarded to Emanuel Miller,

for services rendered in the action brought by Emanuel Miller in the matter of the condemnation of the property now of Ruth Thomas, substituted plaintiff for E. E. Hooker; and, third, upon a petition to the court to award counsel fees to C. Edward Depuy, Esq., counsel for C. J. Neyhart, now to the use of C. Edward DePuy, assignee, from the damages awarded to C. J. Neyhart, for services rendered in the action brought by C. J. Neyhart in the matter of the condemnation of the property now of Ruth Thomas, substituted plaintiff for E. E. Hooker.

As to the rule "to show cause why the order of court entered November 9, 1942", directing that the sums respectively awarded to C. J. Neyhart, now assigned to C. Edward Depuy, and to Emanuel Miller as damages to their leasehold be paid to Wilton A. Erdman, surviving mortgagee of Mary I. Hooker and Wilton A. Erdman, executors and trustees under the last will and testament of Edward E. Hooker, Sr. (said mortgage being recorded in the office for the recording of deeds, etc., at Stroudsburg, Pa., in mortgage book volume 44, page 305, etc.) "should not be amended to subrogate your petitioners to the said mortgage in the net amount awarded to your petitioners and directed to be paid to the credit of said mortgage":

" 'The doctrine of subrogation is invoked in favor of one who has been compelled to pay a debt which ought to have been paid by another; and one so paying it is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnify himself from the fund out of which should have been made the payment which he made' ": Sarapin v. Philadelphia, etc., 306 Pa. 388, 391.

In the case of Gildner v. First National Bank & Trust Company, Bethlehem, 342 Pa. 145, upon which these petitioners rely, our Supreme Court said, as is quoted in the brief submitted on behalf of petitioners:

"Subrogation is granted as a means of placing the ultimate burden of the debt upon the person who should bear it"; but in that case the Supreme Court likewise said (p. 154) :

"It is axiomatic that 'subrogation . . . will never be allowed to the prejudice and injury of the creditor' and that 'until the creditor has been fully paid, substitution or subrogation cannot take place upon any terms whatever': Musgrave v. Dickson et al., 172 Pa. 629, 33 A. 705; Forest Oil Co.'s Appeals, 118 Pa. 138, 145, 12 A. 442; Kyner v. Kyner, 6 Watts 221. See also Denniston v. Hill, 173 Pa. 633, 34 A. 452."

It is true that these petitioners have been, by order of court, obliged to pay a portion of a debt owed by this property owner under the mortgage, but, by reason of the fact that it is but a small portion of the debt that they have paid, the doctrine of subrogation under the rulings of our Supreme Court does not here apply, and they are relegated to such other legal remedies as they may have against either the property owner or their own clients, the leaseholders, for either the collection or a protection of their fees.

Considering the matter of counsel fees claimed by counsel in this case, petitioners rely upon the principle governing the cases of Harris' Appeal and Jacoby's Appeal, 323 Pa. 124. In those cases, our Supreme Court said (p. 134) :

"Under the authorities cited, where the attorney's client, for whom the services were in the first instance rendered, stands on an equal footing with other claimants to the fund, or the latter derive their rights through the owner of the property which gave rise to it, the equitable right of the attorney will be sustained. We will go farther and say that even where a lien creditor, such as the mortgagee in the case before us, has a claim upon the property superior to the owner's, yet, if his interest in the fund created, which the owner is primarily entitled to collect, is substantially identi-

cal with that of the owner, and the fund is realized solely through the efforts of the owner's attorney, who agrees to look to the fund for his compensation, the lien creditor must yield his claim to the attorney's reasonable claim for compensation and must yield his claim also to the payment of the legal costs.

"There is authority for so holding and the equitable principles referred to sustain it. Of course, where the owner has merely assigned to third parties his interest in the award of damages, this cannot defeat the mortgagee's claim to the whole of it on a valid debt. 'It does not lie in the mouth of the owner or his assignees, with notice of the recorded mortgage, to contend that the first mortgagee should be satisfied with an impaired or lessened equity in the mortgaged property': Sarapin v. Phila., 306 Pa. 388, 390, 159 A. 866. Here, however, appellant Jacoby is not a mere assignee, i. e., transferee, of the fund; his efforts contributed to its creation. He conducted the entire litigation which resulted in the award, without assistance from appellee, the party which, if the decree of the court below stands, will be the sole beneficiary of Jacoby's efforts. It is not denied that his efforts were successful and that they resulted in augmenting the fund realized. The attorney agreed to accept his compensation out of the fund, his client being otherwise unable to reimburse him. The interest of the owner and the mortgagee was identical —to raise as large a fund as possible, so that, as the owner hoped, something would be left for her after paying the mortgagee, and, as the mortgagee hoped, its security interest would be realized in full. The attorney's services were more than desirable; they were essential. If the owner had refused to employ counsel and participate in the condemnation proceedings, presumably the mortgagee would have done so. It would be manifestly unjust to permit the mortgagee to reap all the benefits of the attorney's endeavors and to 'get out

from under' even the smallest share of the burden which produced the benefits."

The facts in the case before us differ very substantially from the facts in the case of Harris' Appeal, supra. Here the claimants of counsel fees were not counsel for the owner of the land, nor were they counsel for the mortgagee. They were counsel for leaseholders of a small portion of this land, and while it is true that they had to some extent a common interest in seeing that the fullest measure of damage to their leasehold be established, which would, of course, have some bearing on the total damage to the entire property, the interest they represented was to a large extent antagonistic to the interest of the owner of the land, for it was to the interests of their respective clients and, therefore, the duty of counsel to have awarded to their clients the largest possible portion of the total award of damages to the entire property as damage to their leasehold interest. In considering this matter, we must keep in mind that the total award of damages by the viewers was the sum of $21,500, and of that sum these viewers awarded to C. J. Neyhart, one of the leaseholders, the sum of $1,450, and to Emanuel Miller, the other of these leaseholders, the sum of $900, from which awards appeal was taken to the court of common pleas. By agreement of all the parties, verdicts were taken in the said court when these cases were called for trial, as follows: Ruth Thomas, executor, etc. (owner), $14,000; C. J. Neyhart (leaseholder), $1,000; Emanuel Miller (leaseholder), $900. We must likewise take into consideration that the amount of the counsel fee this court is asked to award from this sum to Leo A. Achterman, Esq., counsel for Emanuel Miller, is the sum of $450, and that the amount that this court is asked to award to C. Edward DePuy, Esq., counsel for C. J. Neyhart and now assignee of C. J. Neyhart, is the sum of $623.50; and again, we must take into consideration that the interest of both C. J. Neyhart and Emanuel

Miller was antagonistic to that of the owner of this property in the first instance in establishing that their interest in this property was not that merely of tenants at will, as the owner contended, but that they were tenants for a definite term or period. It might be that the services rendered by counsel for the lessees contributed in some small degree to the augmenting of the damages here awarded, and though it be true that, as between the owner of this land and these tenants, the owner would in no way be injured by the payment of any fee for the services rendered by these claimants to their clients, as between the mortgagee and these clients quite another situation presents itself.

As to the right of a mortgagee to have awarded to him the damages awarded for the taking or injuring of mortgaged property, our Supreme Court said:

" 'The first mortgagee claims the fund because his mortgage was a first lien at the time of the injury to the mortgaged property occasioned by the change of grade. As the first mortgage [indebtedness] exceeds the amount of the award, the entire [fund] . . . must be awarded to him and it will not be necessary to consider the rights of the other mortgagees. . . . Immediately before the change of grade and the infliction of the injury complained of, the [first] mortgage was secured by the mortgaged premises unaffected by the change of grade. With the change of grade, the mortgagee's security was reduced some $6,000. It does not lie in the mouth of the owner or his assignees, with notice of the recorded mortgage, to contend that the first mortgagee should be satisfied with an impaired or lessened equity in the mortgaged property. The award itself shows that the mortgaged premises have been reduced or impaired in value to the extent of some $6,000. A mortgagee has the right to insist that the mortgage security shall remain intact until his mortgage is discharged, and if in the meantime the mortgage security is impaired or lessened in value by either

the taking of a portion of the mortgaged premises or by injury [thereto] by a change of grade, the mortgagee has the right to demand that the damages arising from such public work shall be applied on account of his mortgage:' citing Woods Run Avenue, 43 Pa. Superior Ct. 475, and cases there cited": Sarapin v. Philadelphia, etc., 306 Pa. 388, 390.

If in the protracted litigation in this case the services rendered by counsel for these lessees did augment this fund to any degree, it is impossible for us from the facts before us to determine what part of their services were rendered to that end. The testimony offered by them before the viewers (and that is the only testimony taken in any proceeding in or through the courts of this county), if probative of anything, was to the end of augmenting the value of the leasehold, and it is impossible for us even to estimate to what degree, if any, their work might have augmented the award of damages in view of the fact that the property owner was pressing his claim for damages on his own behalf and was ably represented by counsel throughout the entire proceeding.

As we have hereinabove stated, the counsel fee which this court is asked to allow to counsel from the award of Emanuel Miller, which award is in the sum of $900, is $450. In the petition for this allowance, Leo A. Achterman, Esq., sets forth: "Your petitioner, however, has entered into a verbal contract with the said Emanuel Miller prior to the rendering of said services, wherein your petitioner contracted to render said services for fifty per cent. of the sum that might be awarded." This allegation sets forth a claim based upon an alleged agreement for a contingent fee. The agreement is unethical and in violation of section 17 of Rule VIII of our Rules of Court, which rule provides:

"Sec. 17. Contingent fees. No agreement between attorney and client for the payment of a contingent fee shall be valid or permitted unless twenty days after

such agreement shall have been made it be reduced to writing; executed by the parties; approved by the Court and filed of record. Provided that this rule shall not apply to mercantile collections."

Such agreement, not having been approved by the court or filed (and this agreement was not approved or filed), would not be enforceable in this court and, as we view it, as against this mortgagee, aside from the violation of our court rules, no such fee would be equitable under the circumstances here and in the face of a $900 award. It may be true that as between counsel and his client and in view of the course this litigation followed such a charge as a fee may be justified; and though, as we have said, it is possible that the efforts of this counsel may have in some degree augmented the award to the property as a whole, they could not, in our judgment, have resulted in any very substantial increase in the award above what would have been made to the property as a whole and what was included in the general award by reason of this feature of the property, for the property covered by this lease was of necessity considered by the viewers in arriving at their award of damage to the whole. While we are mindful of Harris' Appeal, supra, and are heartily in accord with the principle there enunciated, for surely a laborer is worthy of his hire, still, as against this mortgagee we cannot hold that counsel should have, from this fund, a fee, no matter how well justified this charge may be as against his client, for services rendered in his behalf. The fee, perhaps, was earned in following the tortuous course of this litigation but, as the record discloses, but a small part, if any, of the work done was to the end of establishing values for the amount of damage to the leasehold and nothing appears to have been done aside from that to establish value or damage to the property as a whole.

Though it be true that, so far as the fund arising from the award of damages to this leasehold interest

is concerned, the relation of this leaseholder petitioner to the mortgagee is on the same plane as that of the owner to the mortgagee, the lease having been executed subsequent to the mortgage and this mortgage being regularly recorded, the law charges him with notice of it; consequently, should there be 20 leaseholders of a small portion of a tract damaged by a taking for highway purposes instead of two leaseholders as in this case, then, should we hold that counsel in this case be entitled to a fee from the fund awarded to his respective leaseholder, it would necessarily follow that counsel for each leaseholder of a tract who independently employed an attorney to protect his individual leasehold would be entitled to a fee from the fund and, if there were 20 leaseholders in such case, 21 attorney fees could be deducted from the fund awarded as damage in the face of a claim for such fund by a mortgagee. We must bear in mind that "it does not lie in the mouth of the owner or his assignee [or his lessees], with notice of the recorded mortgage, to contend that the first mortgagee should be satisfied with an impaired or lessened equity in the mortgaged property", (and in this case the award here shows that the mortgaged premises have been reduced or impaired in value to the extent of $16,400).

"A mortgagee has the right to insist that the mortgage security shall remain intact until his mortgage is discharged, and if in the meantime the mortgage security is impaired or lessened in value by either the taking of a portion of the mortgaged premises or by injury [thereto] by a change of grade, the mortgagee has the right to demand that the damages arising from such public work shall be applied on account of his mortgage: citing Woods Run Avenue, 43 Pa. Superior Ct. 475, and cases there cited": Sarapin v. Philadelphia, etc., 306 Pa. 388, 390.

We cannot find that this claim for compensation of counsel falls within the rule laid down in Harris' Ap-

peal, supra, nor can we find from the facts disclosed in the record before us that in equity we can make any award of counsel fee in this case.

As to the claim of C. Edward DePuy, Esq., counsel for C. J. Neyhart, the claim of C. J. Neyhart has been assigned to C. Edward DuPuy and by this assignment, in addition to having been counsel for Neyhart throughout this litigation, he now, as assignee, becomes a party to this record. The damage to Neyhart's leasehold was finally, by the verdict taken, found to be, as we have above said, the sum of $1,000. Except for what we have said concerning the contingent fee agreement in the Miller case, there being no contingent fee here, what we have said concerning the fee requested by Mr. Achterman in the Miller case applies with equal force to the fee requested by Mr. DePuy.

Though independent actions were instituted, the claim of both Neyhart and Miller is based upon one and the same leasehold, and the course followed in each action instituted by these leaseholders was identical. If counsel be entitled to the payment of any fee from this fund, it can only be a fee based upon the equitable principles enunciated in Harris' Appeal, supra.

And now, August 25, 1943, the petition of Leo A. Achterman, Esq., for allowance of counsel fees from the fund awarded as damage to the leasehold interest of Emanuel Miller in the action of Emanuel Miller v. Monroe County, to September term, 1938, no. 20, is denied, with costs on petitioner; the petition of S. Edward DePuy, Esq., for allowance of counsel fees from the fund awarded as damage to the leasehold interest of C. J. Neyhart in the action of C. J. Neyhart v. Monroe County, to May term, 1938, no. 42, is denied, with costs on petitioner; and rule to show cause why the order of this court dated November 9, 1942, in the cases of Ruth Thomas, substituted plaintiff for Edward E. Hooker who was original plaintiff in his own right and as executor for the last will and testament of Mary I.

Hooker, deceased, and sole devisee thereunder, v. Monroe County, to September term, 1938, no. 85, C. J. Neyhart v. Monroe County, to May term, 1938, no. 42, and Emanuel Miller v. Monroe County, to September term, 1938, no. 20, should not be amended to subrogate petitioners to the said mortgage in the net amount awarded to petitioners and directed to be paid to the credit of said mortgage is dismissed at the cost of petitioners.