## Bechtel, Appellant, v. Fry.

217    591
38SC   450
38SC   453
38SC   456
38SC   457

*Counties—Contracts—Employment of special counsel—County solicitor —Act of May 22, 1895, P. L. 101—Criminal prosecution.*

It is indispensable in order to render a county liable for the services of additional or special counsel in matters committed by the Act of May 22, 1895, P. L. 101, to the charge of the county solicitor, if such services may be engaged at all, that there be an explicit contract entered into by the commissioners with such counsel, engaging his services

in specifically designated matters, that such contract precede the rendition of the services for which compensation is claimed, and that the services have been rendered in pursuance of such contract of employment.

County commissioners have no authority whatever to employ counsel in a criminal prosecution, inasmuch as the commonwealth through the district attorney administers its criminal laws, and conducts all prosecutions under them.

*Counties—County commissioners—Warrants—Deputy controllers.*

If a warrant be issued by county commissioners to pay the holder of it moneys which he is not entitled to receive from the county, and which the county commissioners have no authority to pay him, its approval by the county controller does not make it conclusive evidence of the county's liability. If the county treasurer has knowledge of the illegality of the warrant, either from its face, or from other sources, it is his duty to refuse to pay the warrant when presented.

Argued March 4, 1907.    Appeal, No. 251, Jan. T., 1906, by plaintiff, from order of C. P. Berks Co., Jan. T., 1906, No. 48, refusing mandamus in case of W. B. Bechtel v. Henry H. Fry.    Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ.    Affirmed.

Petition for writ of mandamus.    Before ENDLICH, J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal of mandamus.

*Walter S. Young*, with him *D. E. Schroeder*, for appellant. —Prior to the Act of May 22, 1895, P. L. 101, creating the office and defining the duties of a county solicitor, the implied authority of the commissioners to employ counsel to attend to the legal matters of the county was never denied : County of Chester v. Barber, 97 Pa. 455 ; Fulton v. Lancaster County, 162 Pa. 294.

The fact that the commissioners have a regularly appointed solicitor does not deprive them of the power to appoint special counsel to assist him in conducting important litigation involving the interests of the county.    The necessity and expediency of such employment rests within the sound discretion of the commissioners : Cumberland County v. Beltzhoover, 6 Pa. Dist. Rep. 625 ; Mayor, etc., of New York v. Ins. Co., 22

N. Y. Super. Ct. 424; State v. Paterson, 40 N. J. L. 186; Smith v. Mayor of Sacramento, 13 Cal. 531; Hornblower v. Duden, 35 Cal. 664.

*George W. Wagner,* for appellee.—A county treasurer is not required to pay all warrants drawn upon him, but only such as are founded on orders of the board of supervisors for the payment of demands legally chargeable against the county and allowed by the board; and he may and should refuse to pay warrants known by him to have been drawn for claims not authorized by law, or expenditures beyond the power of the board to incur: Keller v. Hyde, 20 California, 594; Merkel v. Berks County, 81* Pa. 505; Loucks v. Thompson, 11 Pa. Dist. Rep. 563; Board of Commissioners v. Boyle, 9 Indiana, 296; Pike County v. Rowland, 94 Pa. 238.

The employment of counsel for criminal prosecutions is not within the power of the commissioners: Hight v. Board of Commissioners of Monroe County, 68 Ind. 575; Board of Commissioners of Ripley County v. Ward, 69 Ind. 441; Clough v. Hart, 8 Kansas, 487; Brome v. Cuming County, 31 Neb. 362 (47 N. W. Repr. 1050); Smith v. City of Scranton, 2 Pa. C. C. Rep. 331; Frederick v. Douglas County, 71 N. W. Repr. 798.

OPINION BY MR. JUSTICE BROWN, April 22, 1907:

On December 23, 1905, two of the commissioners of the county of Berks issued to the appellant a warrant upon the county treasurer, payable to his order, for $2,200. It appeared upon its face to be for "special attorney county cases." It was approved and countersigned by the deputy county controller. Upon presentation to the county treasurer payment was refused and the holder of the warrant—this appellant—applied to the court of common pleas for a writ of mandamus to compel its payment. Edwin C. Ruth was the treasurer at the time the writ was applied for, but, his term of office having expired before the return day of the alternative writ, his successor, Henry H. Fry, was, upon the petition of the appellant, substituted as respondent. He made return to the writ. It was demurred to by the petitioner, and on the demurrer judgment was entered for the respondent.

The return averred that the warrant was illegal, because neither the county commissioners in issuing it nor the county controller in approving it had authority in law for so doing, and it was without legal consideration.  The third averment in the return was, " The defendant further avers that prior to the time that said warrant was presented to him for payment, Jacob Miller, the other county commissioner of Berks county, filed in the county treasurer's office a general notice dated December 23, 1905, notifying the treasurer as treasurer not to cash said warrant No. A4381 ; and also upon the same day that this general protest was filed the said Jacob Miller as county commissioner, filed an additional protest against the payment of said warrant, in which second protest the said county commissioner gave notice to the defendant that W. B. Bechtel was never employed by the county commissioners, nor did the county commissioners ever authorize anyone to employ him as counsel in any case of those for which payment was demanded by said warrant, excepting in the case of the county of Berks v. F. F. Bressler, in which Mr. Shalters was the prosecutor ; and also notifying the defendant that the said W. B. Bechtel was not entitled to draw any fees from the county for professional services; a copy of which two notices is hereto attached, marked respectively ' A ' and ' B ' and made part of this return."    The eighth averment was that the " warrant was not founded upon a contract of the county of Berks with the said plaintiff, W. B. Bechtel, or issued in consequence of any liability of the county of Berks to the said W. B. Bechtel."

In the statement of the questions involved the appellant says one is, " Has a board of county commissioners, having a county solicitor, regularly appointed under the provisions of the Act of May 22, 1895, P. L. 101, the power to employ special counsel to assist the county solicitor in certain specified litigation in which the county is a party ? "    This question was not passed upon by the court below, for the judgment in favor of the respondent was based entirely upon the fact alleged in the return and admitted by the demurrer to be true, that the warrant was not founded upon any contract of the county of Berks with the appellant.

The Act of May 22, 1895, P. L. 101, authorizing the appoint-

ment of a county solicitor by the county commissioners, directs that such solicitor "shall commence and prosecute all and every suit and suits brought or to be brought by the county, wherein or whereby any of the rights, privileges, properties, claims or demands of the county are involved, as well as defend all actions or suits brought against the county, and shall perform all duties now enjoined by law upon county solicitors, and shall do all and every professional act, incident to the office, which may be required by the officers named in said board." In view of this direction, one of the contentions of the respondent was that all the legal business of the county is to be attended to by the solicitor, and that the commissioners are without power or authority to employ and pay out of the county funds any special counsel in prosecuting or defending suits brought by or against the county. The learned and careful judge below expressly avoided passing upon this question, intimating, however, that there might be implied power in the commissioners to employ special counsel if necessity for such employment should arise, as, for instance, the sickness, absence or adverse interest of the solicitor. What was decided, and properly decided, was that as the act of 1895 imposes upon the solicitor selected by the county commissioners the duty of commencing and prosecuting all suits brought by the county wherein or whereby any of its rights, privileges, properties, claims or demands may be involved and to defend all actions or suits brought against the county, the commissioners cannot employ anyone else to take the place of the solicitor, or act as his assistant generally ; and if in any case they can employ special counsel it is only in specific matters to be distinctly pointed out, and a contract in all exceptional cases must be made by the county commissioners with special counsel and precede the rendition of the services for which compensation is claimed. This was manifestly correct, and nothing need be here added to the following taken from the opinion of the court below in speaking of the position of the respondent that in no case can special counsel be employed : "It is, however, not essential in this case to decide whether the extreme position taken by respondent is correct or not. Leaving that question open, it is certainly indispensable, in order to render the county liable for the services of additional

or special counsel in matters committed by the act of 1895 to the charge of the county solicitor, if that can be done at all, that there be an explicit contract entered into by the commissioners with such counsel engaging his services in specifically designated matters, and that the services for which compensation is claimed have been rendered in pursuance of such contract of employment. In other words, the statute having designated a certain salaried officer to conduct the legal affairs of the county generally, it cannot be lawful for the commissioners to employ anyone else, either to take his place or to act as his assistant, generally, but only in specific matters to be distinctly pointed out. Next, the employment of such person must be by the commissioners acting as a board, not by the county solicitor or anyone else acting by delegation from the commissioners, and the act of employment must be unequivocal and precise,—not necessarily fixing the rate or amount of the compensation, nor evidenced by a written agreement or a record upon the minutes, but possessing all the elements of a contract binding not only the county to accept, but also the attorney to render the services in question. And, finally, that contract must precede the rendition of the services for which compensation is claimed. That this must be so seems to be the clear teaching of Fulton v. Lancaster County, 162 Pa. 294. That it is demanded by the settled policy of our law is even clearer. The constitution, in art. III, sec. 11, forbids the legislature to provide for the payment of any claim against the commonwealth not founded upon previous authority of law. The municipal act of 1889, in art. IV, sec. 5, imposes, mutatis mutandis, the same restriction upon city councils. Manifestly counties are for the same reasons entitled to the protection of the same rule, and to this extent the doctrine of ratification must be deemed inapplicable to them. No fair-minded person can dispute the fact that the plaintiff here has rendered services to the county which were valuable and advantageous to it. Nor in this proceeding is the reasonableness of the compensation allowed him in dispute, if he is entitled to be compensated for his services. But if they were rendered, as the return avers and as for present purposes the court must believe, without a distinct and binding antecedent employment with reference to the specific matters

in which they were rendered, except in one particular, they must be treated as having been to that extent voluntarily rendered for the public good, without right to claim or authority to accord compensation therefor out of the county treasury."

Upon the assumption that the averment in the return that the county commissioners never authorized anyone to employ the appellant as counsel in any of the cases for which payment was demanded, except in the case of the county of Berks v. F. F. Bressler (which ought to have been, as appears in the sixth averment of the return, Commonwealth v. F. F. Bressler), might be construed as an admission that the county had employed the appellant in that criminal prosecution, the learned judge held that even if a valid contract can be entered into by the county for the employment of special counsel in civil cases, no such contract can be entered into in a criminal case. It is not within the express power of county commissioners to employ special counsel in any case, civil or criminal, and, even if it be within their implied powers to do so in a civil case, there is no such power in criminal cases. The commonwealth itself administers its criminal laws. It commits to a special officer the duty of prosecuting offenders against its peace and dignity and bringing them to punishment, and a county has no more interest in public prosecutions than any private individual, and county commissioners, therefore, have no more right to take out of the public treasury moneys to pay for special counsel in criminal prosecutions than has an individual. The prosecution of Bressler may have been instituted because he had criminally appropriated or withheld moneys belonging to the county, but the object of his prosecution was not to secure the return to the county of any moneys which it may have lost through him, but to vindicate public justice, and the county, as a county, had, therefore, no more direct interest in his prosecution than any individual. The rights, privileges and properties of a county are no more involved in public prosecutions than the rights, privileges and properties of an individual. That a county may pay the costs of public prosecutions makes no difference as to this. It pays such costs out of public moneys simply as the representative of the state, and because the state commands it to do so.

A second contention of the appellant is that a county treasurer, upon presentation to him of a county warrant, properly endorsed, regularly issued at a duly convened meeting of county commissioners, signed by a majority of them, and countersigned by the deputy controller, in payment of a debt or claim, audited and approved by the controller, has no right to refuse payment of the same and to inquire into the regularity of the issuance of the warrant in the admitted absence of fraud or collusion. If a warrant be issued by county commissioners to pay the holder of it moneys which he is not entitled to receive from the county, and which the county commissioners have no authority to pay him, its approval by the county controller does not make it conclusive evidence of the county's liability. His duty is to approve claims "legally due:" Act of June 27, 1895, P. L. 403; and if he approve a claim not legally due—which has no legal existence—his certificate cannot make it so. A warrant signed by a majority of or the entire board of county commissioners is no more conclusive evidence of the county's liability with the county controller's counter signature upon it than it was before the office of county controller was created. What was illegal then could not be enforced against the county even upon a commissioners' warrant, and what is illegal now cannot be enforced with commissioners and controller all together a party to the warrant.

This warrant, having been illegally issued, if it was not founded upon a contract between the county of Berks and the appellant, any taxpayer, after its issuance, could have filed a bill to enjoin its payment. Such bill would have been against the treasurer of the county. He was notified of the illegality of the warrant, and warned not to pay it. If he had not been county treasurer and the notice of its illegality had come to him as a citizen, a court of equity would have been open to him, but, being himself the treasurer of the county, what would have been sufficient to enjoin such officer from paying the warrant is sufficient to justify his refusal to pay it. He would hardly be expected to file a bill against himself, and, upon the notice received by him, it was his duty to refuse payment. " A county treasurer is not required to pay all warrants drawn upon him, but only such as are founded on orders of the board of supervisors for the payment of demands legally chargeable

against the county and allowed by the board; and he may and should refuse to pay warrants known by him to have been drawn for claims not authorized by law, or expenditures beyond the power of the board to incur:" 11 Ency. of Law and Procedure, 540. There was sufficient upon the face of this warrant to put the treasurer on notice, and he might well have refused for this reason alone to pay it until satisfied that there had been a contract entered into by the county for the special services before they were rendered. When orders are issued appropriating public money to purposes that are illegal and the county treasurer has knowledge or means of knowledge of their illegality, it is his duty to refuse to pay them when they are presented. He is bound to know the extent and limit of the authority conferred upon him by the law under which he accepted his office: Merkel v. Berks County, 81* Pa. 505. In that case, as in this, express notice was given to the treasurer that the orders were drawn for illegal purposes.

The assignment of error is overruled and the judgment of the court below is affirmed, without prejudice to the right of the appellant to recover for any services which he may have rendered in civil cases in pursuance of a legal contract with the county commissioners that he should render them.