## Roberts *v.* Fireman's Insurance Company of Newark, New Jersey, Appellant.

Argued October 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused January 25, 1954.

*Donald M. Bane,* with him *Prichard, Lawler & Geltz,* for appellant.

*A. Leonard Balter,* with him *Rubin & Balter* and *Leonard M. S. Morris,* for appellees.

OPINION BY MR. JUSTICE JONES, January 4, 1954:

This appeal grows out of an action in assumpsit instituted on a policy of fire insurance issued by the defendant company on a building owned by the plaintiffs. The policy carried an endorsement extending the coverage to damage caused by certain specified hazards other than fire. At trial the jury returned a money verdict for the plaintiffs. Judgment was entered thereon after the defendant's motions for judgment n.o.v. and for a new trial had been overruled; and the defendant appealed. The question involved relates to the insurance company's right of subrogation to the insureds' claim against asserted tortfeasors who allegedly caused the damage to the insured building for which the plaintiffs sought recovery under the policy. In short, did the insured discharge the insurance company from liability under the policy by voluntarily settling their claim against the alleged tort-

feasors even though the insurer suffered no actual loss by reason of such settlement? Shortly after the trial, the court reporter, who had taken the testimony, died without having transcribed his notes. It later developed that no other reporter could decipher his shorthand. The appeal is now before us upon an agreed statement of facts which need be related.

The extended coverage endorsement of the policy insured the plaintiffs against loss by reason of damage to their building from, inter alia, "vehicles", that term being expressly limited to "vehicles running on land or tracks but not aircraft". The subrogation clause of the policy required the insured to assign to the insurance company "all right of recovery against any party for loss to the extent that payment therefor is made" by the company.

While the policy was in force, construction of a building on a vacant lot adjoining the plaintiffs' property was begun by a contractor. In excavating for the new structure, the subcontractor, who was digging the excavation, made use of a high-lift (an automotive machine) which is a type of bulldozer. A footer ditch was dug along a wall of the plaintiffs' building to a depth below its foundation. While the excavation work was in progress, the entire end of the insureds' building collapsed and, falling into the excavation, killed three of the contractor's employees, then working in the ditch, and seriously injured another. The damage to the insureds' building was estimated at approximately $13,000. The insured gave the company prompt written notice of their loss, claiming that the damage was due to the striking of the foundation wall by the high-lift (vehicle) in the course of the excavation work. The insurance company referred the claim to an adjustor who, after investigation, declined to recommend payment, asserting that the collapse was

not caused by the operation of the high-lift but because of the faulty construction of the insureds' building.

The owners of the building first instituted an action in trespass against the contractor for the damage, alleging it to have been due to his negligence in permitting the high-lift to strike the foundation wall of the building repeatedly. The contractor brought the subcontractor upon the record as an additional defendant. Subsequently, the insured instituted the assumpsit action, here involved, against the insurance company. The latter filed preliminary objections to the complaint which the insured thereupon amended. At that point the parties agreed to let the assumpsit suit lie dormant until the insureds' trespass action against the contractors had been disposed of.

In the meantime, trespass actions for damages against the contractor, the subcontractor and the owners of the building had been begun by or on behalf of the contractor's employees who had been injured or killed when the end wall of the building collapsed. One of the death actions was called for trial. The owners of the building, fearing that a verdict unfavorable to them in that case would be res judicata of their claim against the contractors, obtained an order consolidating their action against the contractors and the death action above referred to for trial. After lengthy conference, a compromise settlement of those suits was arrived at whereby the contractor and the subcontractor each agreed to pay the owners of the building $3,000. Before accepting the aggregate $6,000 settlement, counsel for the insured informed the adjuster of the status of the litigation. He told the adjuster that in his opinion the chance of the insureds' recovery against the contractors, where proof of negligence was necessary, was doubtful and that the in-

sured should accept the settlement offer. The adjuster refused to have anything to do with the compromise or even to advise the insured as to their proper course of action. He merely reiterated his previous denial of the company's liability under the policy. The insured then accepted the settlement offer and executed and delivered to the contractors common law releases contemporaneously with the entry of consent verdicts in favor of the insured against the contractor and subcontractor for $3,000 each. These verdicts were later satisfied. The insurance company does not allege that the insureds' settlement with the contractors was improvident or unfair. Indeed, it is conceded that counsel for the insured acted throughout with the utmost good faith.

Some two years after the insureds' settlement with the contractors, the insurance company filed an answer to the complaint in the assumpsit action. Therein the defendant alleged that (1) the high-lift was not a vehicle within the purview of the extended coverage endorsement, (2) the collapse of the building was not caused by the action of the high-lift but by the faulty construction of the building's foundation, (3) the settlement with the contractors had indemnified the insured for any loss they had suffered, (4) the insured, by releasing the contractors from any further liability, had destroyed the company's right to subrogation under the policy and, hence, had discharged the company for any liability under the policy, and (5) there was no waiver by the insurance company of its contractual right of subrogation. The first three of the foregoing contentions, depending for answer upon factual findings, were resolved by the jury's verdict adversely to the defendant and have since been abandoned.

There remains then only the question arising out of the company's right of subrogation. In fact, the

opinion for the learned court below, in disposing of the defendant's after-verdict motions, states that "At the oral argument and in its brief, . . . defendant has chosen to proceed solely on the motion for a new trial" and that, in support of that motion, the only reason counsel argued was that "the inability to secure a transcript of the record entitled him to a new trial." On that basis, we would be warranted in disregarding the question of law based on the defendant's right of subrogation. As counsel for the appellee reminds us, "It is our rule that questions not raised in the court below will not be heard on appeal by this court [citing cases]": *Grange Nat. Bank v. Collman,* 306 Pa. 200, 203, 159 A. 26. Citing the *Grange* case, supra, we said in *Bourd v. Berman,* 359 Pa. 183, 185, 58 A. 2d 442, that ". . . a matter not raised or *duly pursued* in the court below will not, ordinarily, be considered on appeal" (Emphasis supplied). However, it does not seem to us that the defendant either intended to or actually did abandon its contention that it was relieved of liability upon being deprived of its right of subrogation by the plaintiffs' independent settlement with the alleged tortfeasors. Rather, the defendant appears not to have pressed the question before the court en banc because there was then no transcribed record upon which to argue it. The agreed statement of facts which counsel have filed of record in connection with this appeal are sufficient for the determination of the question whether the plaintiffs' right of action on the policy was extinguished by their settlement with the contractors. In fact, that is the only question raised by the appellant's statement of questions involved.

It is well settled that as a prerequisite to the enforcement of a right of subrogation, the subrogee must have paid or, at least, have offered to pay in discharge of the subrogor's claim: *Brownsville Second National*

*Bank v. London & Landcashire Ins. Co.,* 298 Pa. 53, 57, 148 A. 35; *Insurance Company of North America v. Fidelity Title and Trust Co.,* 123 Pa. 523, 525, 16 A. 791. Here, the insurance company not only did not offer to pay the insureds' claim under the policy or any part of it but, as expressed by its own designated adjuster, persisted in denying liability on the ground that the loss was not covered by the insurance contract. If anyone can be said to have repudiated the policy, it was the insurer rather than the insured. Yet, the company now seeks to avoid liability under the policy by claiming that the insured violated the contract and, in so doing, extinguished the insurer's right of subrogation. The contention is manifestly without merit.

In *Murphy & Co. v. Manufacturers' Casualty Company,* 89 Pa. Superior Ct. 281 (Allocatur refused 89 Pa. Superior Ct. xxv), suit was brought on a policy of automobile casualty insurance which contained, inter alia, covenants that the insured would not settle with a party injured by him without the consent of the insurer and that no suit would be brought on the policy unless the amount of the insurer's liability had been ascertained by a court of law or by a settlement approved by the insurer. After the insurance company had denied liability for damage allegedly caused by the insured, the latter settled with the injured party and then began an action against the insurer on the policy. One of the defenses to the action was that the settlement with the injured party without the assent of the insurer discharged the latter's contractual liability to the insured. In approving a recovery, the Superior Court said (p. 286),—". . . when the company unequivocally repudiated all liability under the policy, it was in no position to insist that the insured must do nothing until an action was brought

against it and then press the case to final judgment, instead of making a settlement of the loss advantageous to both insurer and insured. The insurance company's initial repudiation of the contract in denying liability under the policy relieved the insured of strict performance of those provisions intended for the protection of the insurer only if it recognized the liability and assumed charge of the matters relating to the claim . . . ."

Even if a right of subrogation could be thought to have continued although the company had neither paid nor offered to pay the insureds' claim under the policy, the action of the insurer, in denying liability through its adjustor whose authority in the premises was at least commensurate with the function committed to his charge, constituted a waiver of any such right. The case of *Powers v. Calvert Fire Ins. Co.*, 216 S.C. 309, 57 S.E. 2d 638, which involved an action against an insurance company on an automobile collision policy, is peculiarly apposite on its facts. The defense to the action was the insured's alleged destruction of the insurer's right of subrogation. After due notification of the insured's loss for personal injury and property damage, the insurance company's agent informed the insured that the company would "straighten it out right away". Nothing having been done in response to the insured's repeated requests for an adjustment of the company's liability, the insured settled his suit against the alleged wrongdoer. The evidence indicated that the insurer's adjuster was well aware of the actions taken by the insured. The insured recovered from the company on the policy and, in affirming, the Supreme Court of South Carolina said (pp. 316-317),—"An insurer will not be permitted to profit from such a course of conduct. It cannot sit down and hold its hands and purse and thereafter in any instance, is to be enforced equitably.

escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer. ... It would be highly inequitable under the facts of this case to allow [the insurance company] to shield itself from liability under its contract obligation by the ghost of a formerly available right of subrogation. Waiver is an established doctrine in such cases." See, also, *Firemen's Insurance Co. v. Georgia Power Co.,* 181 Ga. 621, 183 S.E. 799.

Moreover, subrogation is to be accorded upon equitable principles even though the right thereto, as authorized by statute in respect of policies of insurance (Act of April 25, 1945, P. L. 307, Sec. 1, 40 PS §657), is contractually declared. In *Gildner v. First National Bank and Trust Company of Bethlehem,* 342 Pa. 145, 157, 19 A. 2d 910, Mr. Justice MAXEY, speaking for this court, said,—" 'Subrogation rests upon purely equitable grounds and it will not be enforced against superior equities': *Musgrave v. Dickson et al.,* 172 Pa. 629, 33 A. 705 . . . . 'There doctrine of substitution is one of mere equity and benevolence and will not be enforced at the expense of a legal right': *Fink v.Mahaffy,* 8 Watts 384. The doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience: *Young v. Vough,* 23 N. J. Eq., 325, 329; *Aetna Ins. Co. v. Middleport,* 124 U.S. 534, 548. 'The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resulting equity is kept in view': *Acer v. Hotchkiss,* 97 N. Y. 395, 402. All the cases show that subrogation is granted as a means of placing the ultimate burden of the debt upon the person who should bear it." As we have thus recognized, the right of subrogation exists wholly apart from contractual provision and,

From the facts hereinbefore related, it amply appears that the jury was well justified in finding the equities to be with the insured. Their freedom of action was seriously and unnecessarily constricted by the conduct of the insurance company's representative and their every move was made with due consideration for the interest of the insurer. Nor was there any showing that the insurance company suffered actual loss by reason of the insureds' settlement with the contractors. On the contrary, had the insured relied solely upon their claim under the policy, the loss to the insurance company would have been considerably in excess of the jury's verdict which presumably took into account and allowed a credit for the amount collected by the plaintiffs from the contractors.

The cases cited by the appellant are either not controlling or are not in point. The decision in *Niagara Fire Insurance Co. v. Fidelity Title and Trust Co.*, 123 Pa. 516, 16 A. 790, upon which the appellant relies, cited as authority the ruling in *Carstairs v. Mechanics' & Traders' Ins. Co. of New York*, 18 Fed. 473 (1883), which, incidentally, rested upon the reasoning of a lower federal court at a time when such courts were independently declaring and applying a federal commercial common law,—a practice since terminated by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64. More directly to the point, the insurer in the *Niagara* case (unlike the insurance company in the present instance) had offered to compensate the insured for his loss, but the latter refused to subrogate the insurer to his claim. *Highlands v. Cumberland Valley Farmers' Mutual Fire Insurance Company*, 203 Pa. 134, 52 A. 130, is plainly distinguishable on its facts. The record in that case does not disclose that the insurer was ever given an opportunity to compensate the insured for his loss. Furthermore, the

settlement, which the insured made with the alleged wrongdoer, was effected *after* he had been warned by the insurance company "to be careful what he signed for said [railroad] company"—the actual tortfeasor in the belief of both the insurer and the insured. The other cases cited by the appellant (*Illinois Automobile Insurance Exchange v. Braun*, 280 Pa. 550, 124 A. 691; *The Union Insurance Society, Limited, v. Saller*, 95 Pa. Superior Ct. 41; *Commercial Casualty Insurance Company v. Leebron*, 90 Pa. Superior Ct. 201; and *Manley v. Montgomery Bus Company, Inc.*, 82 Pa. Superior Ct. 530) are all equally inapposite. Each involved the principle that an insurance company *which has paid* its insured's claim is, of course, entitled to be subrogated to the insured's rights against the one inflicting the damage.

We find no error in the action of the learned court below and the judgment is therefore affirmed.