## Furia *v.* Philadelphia, Appellant.

Argued October 4, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, and ERVIN, JJ. (WOODSIDE, J., absent).

*Levy Anderson,* Deputy City Solicitor, with him *Israel K. Levy,* Assistant City Solicitor, *Jerome J. Shestack,* First Deputy City Solicitor, and *Abraham L. Freedman,* City Solicitor, for appellant.

*Joseph G. Feldman,* with him *Furia & DiCintio,* for appellees.

OPINION BY ERVIN, J., November 16, 1955:

This is an appeal from a declaratory judgment entered by the court below by which it was determined

that the city's claim for subrogation, arising out of wage payments made by it to an injured policeman under the Act of June 28, 1935, P. L. 477, as amended, 53 PS §327, was subject to the payment of a reasonable fee to the attorney who was instrumental in producing the fund.

Alfred Pirolli, a policeman employed by the City of Philadelphia, was injured on March 29, 1952, when a police car he was operating was struck by an automobile owned and operated by one Forrest L. Garrison, Jr. As a result of the injuries sustained, Pirolli was unable to perform his police duties for a period of 24 days. During this period the city paid him full wages at the rate of $10.99 per day or a total of $263.75, pursuant to the provisions of said act.

Pirolli thereafter retained Edward W. Furia, Esq., a member of the Philadelphia bar, to represent him in his claim against Garrison for damages for personal injuries sustained in the accident. Mr. Furia made an investigation into the circumstances of the accident, and also procured hospital and medical reports to ascertain the extent of Pirolli's injuries.

Mr. Furia advised the city solicitor of his representation of Pirolli, and was in turn informed by the city solicitor of the city's subrogation claim in the amount of $263.75. Furia then wrote to the city solicitor that the city's subrogation claim would be protected, subject to his usual attorney's fee. This letter was not answered by the city.

Negotiations were commenced between Furia and the Farm Bureau Mutual Automobile Insurance Company, which insured Garrison against liability, and the claim was finally settled for the sum of $850.00 in May, 1953, no suit having been instituted. On May 12, 1953, Furia advised the city solicitor that the case had been settled, and informed him that he would be

willing to accept $87.92, or one-third, from the amount of the city's subrogation claim as a fee for his services, and would remit to the city the balance of $175.83. Mr. Furia was advised by the city solicitor that the city would not agree to any deduction from the amount due the city as a fee for his services, and that the city would not execute a release unless it was paid the full amount of its subrogation claim.

After further correspondence between Furia and the city solicitor failed to produce an agreement as to the right of Furia to deduct a fee for his services, Furia finally, on November 25, 1953, obtained payment of the sum of $850.00 from the Farm Bureau Insurance Company without the joinder of the city in the settlement by agreeing with the insurance company to hold the amount of the city's subrogation claim in escrow pending a determination of the respective rights of Furia and the city.

The Act of June 28, 1935, P. L. 477, §1, as amended, 53 PS §327, pursuant to which the city paid Pirolli his full wages during the period of his incapacity, provides as follows: "Any policeman . . . of any . . . city . . ., who is injured in the performance of his duties . . ., and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the . . . municipality, by which he is employed, his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid by such . . . municipality. During the time salary for temporary incapacity shall be paid by the . . . city . . ., any workmen's compensation, received or collected by a policeman . . . for such period, shall be turned over to such . . . city . . ., and paid into the treasury thereof, and if such payment shall not be so made by the policeman . . ., the amount

so due the . . . city . . . shall be deducted from any salary then or thereafter becoming due and owing: . . . ."

It is argued in behalf of the city that no right to a fee exists, either under statute or by virtue of any equitable principle. The lower court's answer to this argument in the following language appears to us to be sound: "The above act contains no specific provision giving the City the right to recover against a third party for payments made by it to injured policemen or firemen. However, it has been held that the City does have a right of subrogation based upon considerations of equity and good conscience: Philadelphia v. Philadelphia Rapid Transit Co., 337 Pa. 1 (1940); Potoczny v. Vallejo, 170 Pa. Superior Ct. 377 (1952). It appears to us that the City's claim being based upon equitable considerations, those same equitable considerations would require the City, which has benefited from the action of the injured policeman and his attorney in prosecuting the claim against the third party, to contribute to the expenses of the litigation."

Subrogation is an equitable doctrine and its basis is the doing of complete, essential and perfect justice between all parties without regard to form. Its object is the prevention of injustice. 37 Cyc. 363, 364, 365.

The right to recover for depreciation in earning capacity was in the policeman alone and the city's right is based on subrogation, which cannot be asserted in a separate suit. *Phila. v. Phila. Rapid Transit Co.*, 337 Pa. 1, 10 A. 2d 434.

What was said in *Harris's Appeal, Jacoby's Appeal*, 323 Pa. 124, 186 A. 92, is particularly applicable here: "If a principle in law or equity can be found to sustain an award of reasonable counsel fee and costs to the owner's attorney, who litigated the compensa-

tion dispute and whose services helped produce the fund, it ought to be applied.

"It would be manifestly unjust to permit the mortgagee to reap all the benefits of the attorney's endeavors and to 'get out from under' even the smallest share of the burden which produced the benefits. We will impose on the fund the payment of the reasonable costs of its creation.

". . .

"In Weed's Est., 163 Pa. 600, 602, 30 A. 278, we said, quoting a syllabus from Trustees v. Greenough, 105 U. S. 527: 'One jointly interested with others in a common fund and who in good faith maintains the necessary litigation to save it from waste and destruction and secure its proper application, is entitled, in equity, to reimbursement of his costs . . ., either out of the fund itself, or by *proportional contribution* from those who receive the benefits of the litigation.' " (Emphasis added)

Counsel for the city suggests that employe's counsel fees and costs should come out of the top of the fund collected and that they should not be prorated and in this connection cites a number of cases which arose under §319 of Pennsylvania Workmen's Compensation Act and which held that the employer or the insurance carrier is entitled to the full amount of its subrogation claim without sharing pro rata in the costs and fees incurred by the injured employe in recovering from the third party. These cases involved the interpretation of §319 as it stood prior to the amendment of May 29, 1951, P. L. 507, §1, 77 PS §671. The Workmen's Compensation Act by §319 provided for subrogation of the employer to the rights of the employe but, because of the wording of various amendments of the said section and their subsequent interpretation, an unfair situation arose whereby attorneys' fees and

costs in regard to suits against third party tortfeasors responsible for the injury of employes were not proratable. After a number of amendments proved ineffective to remedy the situation by reason of the interpretations of their wording by the courts, the legislature, recognizing the inequity in the situation, adopted the amendment to provide expressly that the employer must share pro rata with the employe in reasonable attorney's fees and costs incurred by the employe in obtaining a recovery or in effecting a compromise settlement with a third party.

The same considerations which prompted the legislature to correct the above mentioned inequity should prompt a court, when dealing with the equitable principle of subrogation, to require the proration of attorney's fees and costs between the injured policeman and the city.

In the Pennsylvania cases cited by counsel for the city the principle of law upon which the lower court relied is recognized. In *Hempstead et al. v. Meadville Theological School,* 286 Pa. 493, 497, 134 A. 103, the Court said: "Generally these cases have held that where many persons have a common interest in a trust property or fund, and one of them, for the benefit of all, at his own cost and expense, brings suit for its preservation or administration, the court of equity in which suit is brought will order plaintiff to be reimbursed his costs and expenses, including counsel fees, from the property of the trust, or order those benefited to contribute proportionately toward that expense." In *Com. v. Order of Solon,* 193 Pa. 240, 242, 243, 44 A. 327, the Court said: "It is conceded that the distribution of a fund in the hands of a receiver or other trustee is to be governed by equitable principles; and where the attorney of one of several parties, all equally interested, secures a fund which would otherwise have

been embezzled or lost, and all share equally in the distribution, it is but equitable that all should share in the expense which produced the fund, although but one moved in the matter. But there is no such case here." In *Harrison's Estate,* 221 Pa. 508, 509, 70 A. 827, the Court said: "This is pointed out in the opinion of Justice DEAN, in Com. v. Order of Solon, 193 Pa. 240, where he elaborates the principle involved, and points out the distinction between securing or raising a fund—the actually bringing it into existence, and the mere dealing with a fund which is at the time safely in the custody of the court." In *Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp.,* 334 Pa. 107, 112, 113, 5 A. 2d 890, the Court said: "In Com. v. City Trust, etc., Co., 38 Pa. Superior Ct. 536, counsel for creditors of an insolvent corporation who succeeded in reducing fees claimed by the auditors and the receiver and thereby increased the dividends payable to creditors, were held not to be entitled to compensation out of the fund. The court said (page 539) 'Where an attorney secures a fund, which would otherwise have been lost, it would be both just and equitable that the counsel recovering the fund should receive compensation, but in this case there was no allegation of malfeasance on the part of the receiver or the auditors, nor was any fund recovered by reason of the services of the appellants.' "

Some out-of-state cases are cited which deny proration of counsel fees against an employer's subrogation claim. Some of those cases involve the interpretation of statutes but we are of the opinion that where the fund is created by the work of counsel in behalf of his client, as was done under the particular facts of this case, and the city's right to participate in the fund arises only by virtue of the equitable doctrine of subrogation, it would be inequitable to require the policeman employe to bear all the expenses necessarily ex-

pended to bring that fund into being. A situation can well be imagined where the employe would receive nothing for pain and suffering if the amount he recovered from the third party tortfeasor was not greater than the amount which he had received from the city for loss of wages during his period of incapacity. It would be much more equitable in all cases to require the city as well as the employe to bear a pro rata share of the expenses.

It is also argued in behalf of the city that a private attorney, unless with the prior consent of the city solicitor and pursuant to express contract made according to law, cannot undertake to render legal services for which the city may be required to pay. To support this argument counsel cites such cases as *Light v. Lebanon County*, 292 Pa. 494, 141 A. 291; *Bechtel v. Fry*, 217 Pa. 591, 66 A. 992; *Miller v. Phila.*, 231 Pa. 196, 80 A. 68; *Com. ex rel. v. Jones*, 275 Pa. 298, 119 A. 404; *Flood Appeal*, 178 Pa. Superior Ct. 75, 113 A. 2d 349. In some of these cases, such as in *Light v. Lebanon County*, supra, *Com. ex rel. v. Jones*, supra, attorneys' fees to private counsel were allowed. The real distinction between these cases and our present case is that in those cases the private attorney was active in a matter in which the municipality was the principal litigant suing for money directly due to it, whereas in the present proceeding all of the damages to be recovered were due in the first instance to the policeman and for which he alone could sue. The city's only right in the fund created by the policeman's independent action was by way of subrogation. *Phila. v. Phila. Rapid Transit Co.*, supra; *Potoczny v. Vallejo*, 170 Pa. Superior Ct. 377, 85 A. 2d 675. The policeman in this case had the right to select and employ his own counsel to represent him in a cause of action which was his and his alone. All of the items of damage in the claim

against the third party tortfeasor belonged to the policeman. These items were pain and suffering, depreciation in earning capacity and medical bills. Nowhere in the statutes providing for the city government can we find any provision which required the law department or the city solicitor to represent the policeman in his suit against the third party. What was said in *Com. ex rel. v. Jones,* supra, at page 301, is applicable to this case: ". . . there has been no act of assembly called to our attention, nor have we found any, enjoining upon the county solicitor the duties relator performed, and there is neither allegation nor proof that the county solicitor, because of appellee's employment, has not done all the professional acts incident to the office required of him by the board of commissioners, hence the services rendered by the relator were not within the strict terms of the act." It is, of course, true that a private attorney could not receive a fee from a municipality for a suit instituted in behalf of the municipality or work done directly for it, without a contract, special or implied. In this case it was admitted that the private attorney had no such contract. Here the attorney relied upon the equitable principle that when one in good faith creates a fund from which another receives a benefit, the latter person, either out of the fund itself or by a proportionate contribution, should help to pay the costs necessary to create the fund. What was so aptly said by Mr. Justice JONES in *Roberts v. Fireman's Ins. Co. of N. J.,* 376 Pa. 99, 107, 101 A. 2d 747, is applicable: "Moreover, subrogation is to be accorded upon equitable principles even though the right thereto, as authorized by statute in respect of policies of insurance (Act of April 25, 1945, P. L. 307, Sec. 1, 40 PS §657), is contractually declared. In Gildner v. First National Bank and Trust Company of Bethlehem, 342 Pa. 145, 157,

19 A. 2d 910, Mr. Justice MAXEY, speaking for this court, said,—' "Subrogation rests upon purely equitable grounds and it will not be enforced against superior equities": Musgrave v. Dickson et al., 172 Pa. 629, 33 A. 705 . . . "The doctrine of substitution [subrogation] is one of mere equity and benevolence and will not be enforced at the expense of a legal right": Fink v. Mahaffy, 8 Watts 384. The doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience: Young v. Vough, 23 N. J. Eq. 325, 329; Aetna Ins. Co. v. Middleport, 124 U. S. 534, 548. "The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resulting equity is kept in view": Acer v. Hotchkiss, 97 N. Y. 395, 402. All the cases show that subrogation is granted as a means of placing the ultimate burden of the debt upon the person who should bear it.' As we have thus recognized, the right of subrogation exists wholly apart from contractual provision and, in any instance, is to be enforced equitably."

In *Flood Appeal,* supra, cited in behalf of the city, on page 77 we said: "We agree with appellants that an exception to the general rule has been recognized if the services of counsel create or protect a common fund."

Finally, it was argued in behalf of the city that an attorney's lien may not be imposed upon moneys belonging to a municipality which are in the hands of a private attorney. In the case of *Com. v. Gerlach,* 347 Pa. 385, 32 A. 2d 410, cited by the city, an attorney was employed by the Commonwealth as its counsel in Luzerne County to collect certain claims against individuals and estates of deceased recipients of benefits due and owing to the Commonwealth. A number of

cases were referred to him and prosecuted by him to judgment, in three of which he succeeded in collecting $1,374.50 for the Commonwealth. He refused, however, to turn over the money so collected and when the Commonwealth brought suit to recover it, he asserted a claim of set-off in the amount of $2,910.21 for services rendered in the various cases assigned to him. It was held that the attorney had no lien for services against these public funds because "To interfere with the obtaining of revenue by the assertion of cross-claims would be clearly against public policy." This rule is not applicable to the instant case. In the present case the attorney was not employed by the city to collect moneys or revenue due the city or recover public funds belonging to the city. He was employed by a private citizen to attempt to obtain damages for injuries sustained by the citizen. Unless he could establish that the third party tortfeasor was negligent and that his client was free from negligence, no fund would be created to which the city could look for reimbursement for the payments it made to the policeman during his temporary incapacity. The money which was paid to the policeman by the third party's insurance carrier was compensation for the damages he sustained and did not represent revenue or moneys due the city. This money was to compensate the policeman for his pain and suffering, depreciation in earning capacity and medical expenses which he had incurred. The equitable claim of the city as a subrogee in the fund thus created is an equitable one which required it to do equity by contributing a pro rata share of the costs involved in the creation of the fund. If the private attorney had been employed by the city to collect the money it paid to a police officer during his period of disability for a dishonest or faked injury, the principle applied in the *Gerlach* case might be applicable. In other

62

words, the principle of the *Gerlach* case is not applicable to the facts of the present case because the fund here involved is not a public fund. The city could not bring a separate suit for these injuries. *Phila. v. Phila. Rapid Transit Co.,* supra.

Judgment affirmed at the cost of appellant.